## STOKES v. STOKES.

INTESTATE'S ESTATES—SET OFF—ADMINISTRATOR—HEIRS.—NEPHEWS whose father predeceased their intestate uncle are entitled to their distributive share under the statute, without any equity in the administrator to set off against their shares debts due the intestate by their father.

Before BUCHANAN, J., Colleton, May, 1901. Reversed.

Action by Jos. W. Stokes, Hattie A. Smith and Anna V. Stokes against A. E. Stokes, as administrator of estate of James R. Stokes. From Circuit decree the plaintiffs appeal.

*Mr. Jno. R. Bellinger,* for appellant, cites: *Facts here warrant presumption of payment of debts alleged due intestate:* 1 Rich. Eq., 53; 4 Rich. Eq., 16; 10 Rich. Eq., 301. *But whether paid or not, they could not be charged to appel-*

*lants:* 16 S. C., 218; 25 S. C., 204; 4 Myl. & Cr., 442; 1 Beav., 131; Williams on Exors., *1120. *If not paid, debts are barred:* 23 S. C., 461.

*Messrs. Howell & Gruber,* contra, cite: *The administrator may retain the shares of the appellants and apply to payment of their father's debt:* 25 S. C., 304; Rev. Stat., 1980, sub. 3; 11 Ency., 2 ed., 1170, 1171. *Statute of limitations do not constitute a bar:* 16 S. C., 216; 25 S. C., 293.

January 22, 1902. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action by the plaintiffs against the defendant, as administrator of J. R. Stokes, deceased, to require him to pay to them an amount alleged to be due them as heirs at law of the defendant's intestate. James R. Stokes died on the 30th of May, 1899, intestate, leaving as his heirs at law his widow and certain nephews and nieces, among whom are the plaintiffs, children of a predeceased brother, William E. Stokes, who died on the 17th April, 1895. Among the intestate's papers were found three notes, dated in April, 1884, executed in his favor by Wm. E. Stokes, and a book containing an open account against him, showing a balance due on 31st August, 1894. His Honor, Judge Buchanan, decided that the respondent had the right to set off these notes and accounts against the share of the appellants; that the statute of limitations could not be pleaded against such right, and that these debts of Wm. E. Stokes being greater than the share of the appellants, the complaint should be dismissed.

The plaintiffs appealed upon several exceptions, the practical question raised by which is, whether his Honor, the Circuit Judge, erred as to the right of set off or retainer. The authorities are in irreconcilable conflict, and we shall not attempt to review them at length, but only quote from certain of them that give the correct reasons for the conclusion we have reached. We will first set forth our statute law

bearing upon this question. Subdiv. 3, sec. 1980, of the ·Revised Statutes is as follows: "3. If the intestate shall not leave a lineal descendant, father or mother, but shall leave a widow and brothers· and sisters, or brother or sister, of the whole blood, the widow shall be entitled to one moiety of the estate, and the brothers and sisters, or brother or sister, to the other moiety as tenants in common. The children of a deceased brother or ·sister shall take among them respectively the share which their respective ancestors would have been entitled to had they survived the intestate." Sec. 1983 of the Revised Statutes is as follows: "Nothing herein contained shall be ·construed to give to any child or issue (or his or her legal representatives) of the intestate a share of his or her ancestor's estate, where such child or issue shall have been advanced by the intestate in his lifetime by portions or portion equal to the share which shall be allotted to the other children. But in case any child, or the issue of any child, who shall have been so advanced shall not have received a portion equal to the share which shall be due to the other children (the value of which portion being estimated at the death of the ancestor, but so that neither the improvements of the real estate by such child or children, nor the increase of the personal property, shall be taken into the computation), then so much of the estate of the intestate shall be distributed to such child or issue as shall make the estate of all the children to be equal." In sec. 71 of Woerner on Administration, vol. 1, pages 149, 150, the author thus states the general principle governing such cases: "The question sometimes arises, whether advancement made to or debts owing the intestate by heirs who die before the intestate leaving children who thereby become heirs, are to be deducted from the distributive shares of these children. It seems clear on principle, and is supported by the preponderance of adjudged cases, that, in the absence of a statutory regulation, a distinction must be drawn between *advancement* and *debts;* and also between heirs taking in their own right and those taking by representation. Heirs taking in their own right directly

from the intestate by virtue of their propinquity of blood, not being liable for the debts of their ancestors, and these because they died before the intestate, having no interest in the inheritance, so that there is no connection or correlation between the inheritance and the debt, take their shares free from any deduction on account of debts owing by their parents or ancestors to the intestate. But heirs taking by representation take not in their own right, but in virtue of the right transmitted to them by the deceased heir; hence it may be said that they can take no more than the latter could have taken if he had survived the intestate. The same result follows where the statute declares that the issue of a deceased heir shall take such share only as would have descended to the parent if living at the death of the intestate."

In *Sartor* v. *Beaty,* 25 S. C., at page 304, the Court quotes with approval the following language from *Smith* v. *Kearney,* 2 Barb. Ch., 534: "The right of retainer depends upon the principle that the legatee or distributee is not entitled to his legacy or distributive share while he retains in his own hands a part of the funds out of which that and other legacies or distributive shares ought to be paid, or which is necessary to extinguish other claims on those funds. And it is against conscience that he shall receive anything out of such funds without deducting therefrom the amount of the funds which is already in his hands as a debtor of the estate. And the assignee of the legatee or distributee in such case takes the legacy or distributive share subject to the equity which existed against it in the hands of the assignor." Continuing, the Court says: "The same principle as that found in the extract above, has been perhaps more directly and clearly expressed by Lord Cottenham in *Cherry* v. *Boultbee* (4 Myl. & Cr., 442-447), as follows: 'It must be observed that the term set off is very inaccurately used in cases of this kind. In its proper use it is applicable only to mutual demands, debts and credits. The right of an executor to retain a sufficient part of a legacy given by the creditor to the debtor to pay a debt due from him to the creditor's

estate, is rather a right to pay out the funds in hand than a right of set off; such right of payment, therefore, can only arise where there is a right to receive the debt so paid, and the legacy or fund, so to be applied in payment of the debt, must be payable by the person entitled to receive the debt.' Whether, then, the claim in the hands of the administrator could be set up or not, as a strict counter-claim; yet it being a debt against the distributee and a debt which he holds as administrator, the right of retainer under the above principle as to the personal estate, seems to us to be complete, both against his distributee and his assignee." In *Carson* v. *Carson,* I Met. (Ky.), 302-3, the Court says: "Upon what principle can the debts against the ancestor of the appellants be regarded as a charge upon the legacy to which the latter are entitled *as legatees?* The legacy in contest certainly never vested in the ancestor in his lifetime, and at his death he had no interest in the estate of his father, which devolved upon his children, as his legal representatives. They claim, now, not in his right, but in their own right. Upon the death of the testator, the legacy vested immediately in them, and can no more be subjected to the debts of their father than any other estate which may have been acquired by them since his death from any other source. If D. B. Carson had survived the testator, he would have taken the estate bequeathed, and the whole of it, subject only to the charge for the advancement as contained in the will. *As legatee,* he would have been entitled to one-tenth of the residuary fund, without any encumbrance or charge except such as the will itself created. It is very true, that enforcing the payment of the legacy, the executor might have subjected a portion of it by way of set off to the payment of the debts due by the legatee to the estate, but this right would have been founded upon equities wholly extrinsic, and having no connection with the will, or with any right derivable from it. So that it could not, with any propriety of speech, be said that the legatee, if he had survived, would have taken the estate bequeathed, *subject to the payment of his debts to the testator.* On the contrary,

he would have taken it, as already remarked, subject only to the conditions and encumbrances prescribed or created by the will itself. And under the statutes referred to, his surviving issue take the estate bequeathed, as he would have done if he had survived the testator, and subject, in like manner, to no other charge than the will itself creates." In Succession of Morgan, 23 La. An., 290, the Court uses this language: "A dead man can neither get nor give; he can neither inherit nor transmit. The representative of the deceased person does not receive by transmission from that person, and *jure alieno,* he receives by designation of law and *jure suo.* It follows, therefore, that the representative is not by the fact of representation merely rendered personally liable for the debts of the person whom he represents. He is endowed by the law with the rights of the latter in a certain succession, but is not laden with the obligation of that latter to the rest of the world. He is not an accepting heir, but a designated representative. This doctrine is elementary, and we do not understand that its correctness is questioned by the appellants." Continuing, the Court says: "It is urged by appellants that the effect of the judgment of the Court below is inequitable. It must be remembered, however, that there is no question of natural right in the case. The right of property terminates with the death of the proprietor. We brought nothing into this world, and it is certain that we can take nothing out. The right of succession is not a natural, but a civil and social right. Succession is a civil institution, by which the law transmits to a new proprietor, designated in advance, the thing that the preceding proprietor has just lost. Especially is this true of the succession of collaterals, *ab intestato,* under the provisions of law which create and control the fiction of representation."

The case which we have under consideration does not involve any rights arising from advancements, as in *McClure* v. *Steele,* 14 Rich. Eq., 105. But we have quoted sec. 1983 of the Revised Statutes for the purpose of showing that

while there is a special provision as to advancements, there is none relative to debts. The following are our conclusions as to the question under consideration : The right of retainer on the part of the administrator is a mere equity, not arising under, but is independent of the statute. The share which the deceased parent would have been entitled to, if he had survived the intestate, does not constitute part of the assets of his estate and is not liable to the payment of his debts. There is no privity between the estate of the deceased parent and his children as to property descending to them under the statute from their intestate uncle. The provision of the statute that the children of a deceased brother should take among them respectively the share which the ancestor would have been entitled to, had he survived the intestate, means the share to which he would have been entitled, *under the statute,* irrespective of any equity which would have arisen if the parent had survived the intestate. Any other construction would make the property of the children subject to his debts in behalf of a particular creditor, and not of any other creditors holding valid claims against his estate. The parent could not have assigned or released his interest in the estate so as to be binding upon his children in case he did not survive the intestate. How, then, can this particular creditor claim an equity as against the right of the children, when they were under neither moral nor legal obligation to pay the debt, and which would destroy their rights more effectually than if the parent had by the most solemn writing endeavored to dispose of all interest in the intestate's estate? If the statute had intended that the share of the children should be chargeable with the debts of the deceased parent, it would have made provision to that effect as was done in the case of advancements. Having reached this conclusion, it becomes unnecessary to consider the exceptions in detail.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and the case remanded for such further proceedings as may be necessary to carry into effect these conclusions.