13885

RASOR v. RASOR *ET AL.*

(175 S. E., 545)

366

*Messrs. Grier, Park, McDonald & Todd* and *C. A. Young,* for Jake Rasor, plaintiff-appellant-respondent and *R. E. Babb,* for W. Earle Rasor, defendant-appellant-respondent,

*Messrs. O. L. Long* and *J. H. Sullivan,* for defendants-appellants-respondents,

July 13, 1934.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The primary purpose of this action in equity is to secure an accounting and settlement of the estate of W. C. Rasor, deceased.

Mr. Rasor was killed at his home at Cross Hill, S. C., September 26, 1931. His son, J. Henry Rasor, was convicted of the murder of his father and is now serving a sentence of lifetime imprisonment therefor. W. C. Rasor left of force his last will and testament of which his son Jake Rasor was named executor; he has qualified as such executor and brings this action in his capacity as executor, and individually as legatee under the will, against the defendants, who are the children and grandchildren of W. C. Rasor and legatees under his will.

The matter was referred to R. W. Wade, Esq., to hear and determine the issues of law and of fact. He filed an able report which evinces a careful study and full comprehension of the issues contained in the case. On exceptions to his report, the case was heard by Hon. C. C. Featherstone, Judge of the Eighth Circuit. From his decree the case comes to this Court on exceptions made by the plaintiff and the defendants.

The exceptions on behalf of J. Henry Rasor are succinctly stated as follows: That the Circuit Judge erred in sustaining the referee in his finding that Henry Rasor was indebted to the estate of W. C. Rasor in the sum of $8,185.71; That

the Circuit Judge erred in not holding that the intention of the testator was that the property bequeathed to his children should be taken by them free of any debts which they owed him.

The exceptions of the other defendants make these questions: That the Circuit Judge erred in sustaining the referee in his finding that J. Henry Rasor was indebted to the estate of W. C. Rasor in the sum of $8,185.71; that it was error not to hold that it was incumbent on the executor to account for the collateral which J. Henry Rasor deposited as security for his indebtedness to his father; that it was error not to hold that the children of J. Henry Rasor took the property bequeathed to their father free of the debts owed by their father to the estate of W. C. Rasor. Because the Circuit Judge erred in holding that the equitable doctrine of retainer applied in this case. Because his Honor, the Circuit Judge, erred in holding that the doctrine announced in the case of *Stokes v. Stokes,* 62 S. C., 346, 40 S. E., 662, is not applicable in this case. Because the Circuit Judge erred in construing Section 8874, Code 1932, and in holding that if a person murder his parent his children take the part he would have taken, subject to his debts to his parent. Because the construction placed on Section 8874 by the Circuit Judge is governed by his individual ideas of right and wrong, and ignores well-established principles of law applicable thereto, which construction renders the statute unconstitutional.

The exceptions of Jake Rasor, as executor and individually, and of W. Earle Rasor, are: That the Circuit Judge erred in holding that the trust estate in favor of Charles C. Rasor, who predeceased the testator, leaving no wife nor children, is not involved herein but passes automatically under the provisions of the will to the trust estate created in favor of Jake, Earle and Henry. He should have held that the estate created in trust for Charles lapsed by reason of the death of Charles before the death of his father; that the

Circuit Judge errred in holding that it was the clear intention of the testator to create three trust estates of equal value and amount, and in not holding that the legacy in respect to the Grendel Mill stock was a special legacy; that the Circuit Judge erred in not finding that the special referee erred in finding that the testator, or scrivener who prepared the will, could have had no other purpose in mind in specifying the par value of the Grendel Mill stock than to declare testator's intention to create three equal trust estates; that it was error for the Circuit Judge to sustain the finding of the referee that it was the intention of the testator that the trust estates created in the will should pass intact, even to the exhaustion of the property of the estate and without any diminution, but should have held that in the case of Henry the legacy was adeemed *pro tanto*; that it was error for the Circuit Judge to hold that the legacy of one hundred shares of the capital stock of Grendel Mills put in trust for Henry is a demonstrative or general legacy not subject to ademption and not adeemed *pro tanto*, and in upholding and affirming the referee in his holding that the trust estate created for Henry and his children should receive from the estate a number of shares of the preferred stock of Grendel Cotton Mills sufficient to constitute a par value of $5,000.00; that the Circuit Judge erred in affirming the holding and finding of the referee that the trustee in bankruptcy for Henry had sold certain collateral securities held by the testator as security for the payment of the note of Henry to the testator for $11,694.00; that it was error of the Circuit Judge not to find and hold that in finding the interest which Henry would have taken under his father's will and which under Section 8874 of the Code would pass to his children, it is proper for the executor under the doctrine of equitable retainer to charge to Henry's "interest" the sum of $11,694.-00, which he owed the estate.

The separate exceptions of Jake Rasor relate to the alleged errors of the Circuit Judge in holding that the testator did

not intend that the notes of Henry for $11,694.00, and of Earle for $9,772.65, should be considered obligations of the makers. These exceptions are several in number but need not be more specifically stated, since their consideration is necessarily involved in the exceptions already set forth.

The separate exception of Earle Rasor is that the Circuit Judge erred in holding that Earle must account for what he owes the estate, there being no testimony that Earle owed the estate any sum other than that represented by his note for $9,772.65, which had been forgiven him.

Counsel for each set of appellants state the questions for consideration made by their several exceptions in their own way.

We think they may be grouped and disposed of under these general heads:

It is conceded that Henry having been convicted of the murder of his father, is excluded by Section 8874 of the Code from taking any interest under his father's will or in his father's estate. It is also conceded that his children take the interest that he would have taken except for his conviction of his father's murder. In finding what his interest would have been, certain questions must be determined, viz.: Is Henry chargeable with the note for $11,694.00? Is his interest chargeable with the notes of 1926 which in the aggregate amount to $8,185.71, as of June 1, 1933, found by the referee to be due by him to his father?

This question involves the applicability of the doctrine of equitable retainer; and the question whether the children of Henry take under the will of W. C. Rasor by operation of the statute, Section 8874 of the Code, chargeable with the debts of Henry. A further question is involved in determining whether the legacy in trust for Charles lapsed or passed under other provisions of the will. Again, was the legacy of one hundred shares of Grendel Mill stock in trust for Henry adeemed *pro tanto,* or should a sufficient number of shares

of that stock be allotted to that trust estate to make it equal in value to the trust estates created for Earle and Charles?

Under these various heads all the several questions made will be considered, but in no special order. To save the constant repetition of the surnames of the parties, we shall follow the example of the Circuit Judge and speak of the several persons by their given names.

It will conduce to an orderly understanding of the case to consider first Section 8874.

In the case of *Smith v. Todd,* reported in 155 S. C., 323, 152 S. E., 506, 70 A. L. R., 1529, Mr. Justice Stabler gave a thorough consideration to the provisions of this section and made a very clear exposition thereof.

The language of the Act is as follows:

"No person who shall be convicted in any Court of competent jurisdiction of unlawfully killing another person shall receive any benefit from the death of the person unlawfully killed, except in cases of involuntary manslaughter, whether by way of intestate succession, will, vested or contingent remainder or insurance or otherwise.

"The interest which would devolve upon the person excluded from receiving any benefit by the terms of this section, shall vest in and become the property of the estate of the person unlawfully killed: and, *Provided, further,* That in case the offender is a parent of a child or children, who, if such parent were dead, would inherit from the deceased, then, in that event, the said child or children shall immediately take the interest in the estate of the deceased, which the offending parent would have taken, except for the provisions hereof."

The opinion in *Smith v. Todd, supra,* makes plain that the provision of the first paragraph of the quoted statute is a rule or principle of the common law long recognized and enforced. It is held that the statute did not abrogate the common law by the provision that upon conviction for

unlawfully killing another the person so convicted can take no benefit from the estate of his victim.

But it is with the second paragraph of that section that we are specifically interested, and around the construction of which argument centers.

The "interest" which would have "devolved" upon Henry is that which his children would have taken from the estate of their grandfather as if Henry had predeceased his father.

Stress is laid in the argument on the language used in the statute: "The said child or children shall *immediately* take the interest in the estate of the deceased, which the offending parent would have taken." The argument is that the use of the word "immediately" signifies that instantly upon the conviction of Henry the interest he would have taken under his father's will vested in them in their own right, and that there being no debts due by them to their grandfather's estate, they took the interest free from any debt which their father may have owed to the grandfather. We think the proper interpretation of the word "immediately" is that the chilren took directly from the will of their grandfather and not by descent from their father. But we do not think they take it free from any debts Henry may owe the estate. They take the interest which Henry would have taken. That interest can only be determined by a settlement of the accounts of all the parties in interest in the estate, and a balancing of the accounts. That is the interest which Henry would have taken but for the terms of the statute, and it follows that that is the interest which the children must take. It is urged in behalf of the children that such holding is in contravention of the rule laid down in the case of *Stokes v. Stokes,* 62 S. C., 346, 40 S. E., 662, and it is charged as error that the Circuit Judge did not so hold. His Honor, strictly speaking, did not construe the applicability of the *Stokes case* to this case, but stated that he hesitated to apply it because it would work a wrong. We do not think it is applicable here. There the question was whether nephews and

nieces took, under the statute of distributions, the share which their father would have taken in the estate of his brother, who died intestate, if their father had survived his brother, free of the debts their father owed his brother's estate. Here the children take under the will of the deceased, by operation of the statute, only that which their father would have taken, if he had not been excluded by operation of the statute. They take immediately from the deceased and by operation of the statute can take only what their father would .have taken. Then the question arises: Has the executor the right to retain from the interest of Henry what he owed the deceased? In other words, does the doctrine of equitable retainer apply?

We may here dispose of the exceptions which relate to the notes for $11,694.00, given by Henry to his father, and that for $9,772.65 given by Earle to his father. We concur with the referee and Circuit Judge in holding that the evidence warrants the conclusion that W. C. Rasor did not hold these notes as debts against Henry and Earle. The notations in his ledger, made by him, support this view.

By the same token the fact that there are no notations in the ledger to lead to the opinion that Henry's later notes given in 1926 were not held by his father to be valid debts, and by the uncontradicted testimony that Henry admitted their validity, and claimed and was allowed certain credits for payments thereon, fix their status as debts due by him. The doctrine of equitable retainer is so well established as a canon of the law, that it does not need authority to be cited in its support. The rule is thus stated in an annotation in A. L. R., 993: "The right of an executor or administrator to retain a legacy or distributive share from a debtor to the estate, and apply it to the indebtedness, has long been recognized by the law as existing without any statute. It is not the technical right of set-off in actions at law. It is rather called, in the old cases, the right of retainer. It is an equitable right of its own nature, and not at all dependent upon any

statute. It is the plain moral as well as legal duty of the debtor to pay his debt to the estate. He has had the value from the estate. He ought, in morals and law, to restore it. It needs no statute to affirm this duty. It is self-evident."

See, also, annotation in 75 A. L. R., 878, and annotation in 30 A. L. R., 775.

It is proper to state here that the exceptions which charged error for that the executor was not required to account for the collateral which Henry gave as security for his 1926 notes are without merit. The evidence sufficiently accounts for them.

We hold that the sum due on the 1926 notes given by Henry to his father is properly chargeable against the interest which the children take.

It alleged that the Circuit Judge erred in holding that Earle must account for what he owes the estate, since it is held that he owed only the note for $9,772.65, which his father had charged off. We think this exception is taken under a misapprehension of what the Circuit Judge meant. It appears that the executor had loaned money to Earle from the funds of the estate, after the death of the testator. The referee had held that the executor was primarily responsible for this money. It is clear that the Circuit Judge meant that Earle must account to the executor for this money so loaned to him.

The will of W. C. Rasor created three trust estates, in favor of Henry, Earle and Charles, respectively. Charles died before his father, leaving neither wife nor child. The plaintiff contends that the trust estate created for him has lapsed, and that it reverts to the estate of the testator and becomes a part of the residuary estate. The defendants maintain that the trust did not lapse, but passed under the provision of the will, which is to the following effect: "Upon the death of my son Charles C. Rasor, said trust estate herein created for his benefit shall terminate, and the same shall go, be delivered, paid and transferred abso-

lutely, free of trust to the heirs of his body who shall survive him, but if he should die without heirs of the body surviving him, then and in that event, said trust estate shall go to my other sons to be equally divided among them, share and share alike, etc."

There can be no question that the general rule is that if one to whom a general legacy is given by will die before the death of the testator the legacy lapses. But there are exceptions to the rule. If the will which gave the legacy provides for the distribution of the legacy in the event of the death of the legatee before the legacy is received, the law will recognize such direction as the will of the testator and give effect to it. In the present case the testator clearly declares that in the event of the death of Charles without heirs of the body the estate provided for him should go to his brothers. Charles died a year before his father did. Is it not reasonable to infer that if the testator desired that this legacy go elsewhere than as directed by his will, he would have made the necessary testamentary changes? "Generally if a legatee or devisee dies before the testator the legacy or devise lapses, but whether or not a lapse is to occur depends primarily on the question of the testator's intention." 28 R. C. L., 337.

It seems clear that the testator in this case carefully and expressly provided that the legacy should not lapse. This trust fund is properly distributable among Jake, Earle and the children of Henry discharged from the trust. The children of Henry taking among them the share he would have taken.

The testator, as heretofore said, had created a trust estate for Henry consisting of one hundred shares of the preferred stock of the Grendel Mills, stated by the will to be of the par value of $50.00 per share. The aggregate value of the trust estate as there created was $5,000.00. By the same will he created trust estates for his sons Earle and Charles consisting of fifty shares for each of them

of the capital stock of the Ware Shoals Manufacturing Company. The will does not state the par value of this stock, but the record shows it to be $100.00 per share.

Just a short time, ten days or two weeks, before the death of W. C. Rasor, the stock of the Grendel Mills was reduced from the par value of $50.00 to that of $20.00 per share, and the difference paid to Mr. Rasor in cash. No change affecting this situation was made in the will. The plaintiff contends that this was a specific legacy which was adeemed *pro tanto,* and the children of Henry take only the one hundred shares of Grendel Mills stock named in the will. The referee held that this was a demonstrative legacy; he held that it was plainly deducible from the terms of the will that it was not the intention of the testator to make the trust estates charges upon the residuary estate; that it is evident that the testator intended to make the trust estates of equal value, viz., $5,000.00 each; that the testator directed his executor to pay all taxes, inheritance and otherwise, which might be assessed against the trust estates, and to sell any property of the estate, real or personal, to pay such taxes and charges. He found that the estate had on hand a sufficient number of shares of Grendel Mill stock to constitute a par value of $5,000.00 at the reduced value, and he recommends that this amount be allotted to the trust estate created for Henry. The Circuit Judge frankly stated that he had grave doubts of the character of the legacy, but he holds that: "Whether the legacy is specific, pecuniary or demonstrative the intention of the testator is the law of the case and ought to prevail."

It appears to us to be clear that the intention of the testator was to create three trust estates each of the value of $5,000.00. This is manifest by the fact that he stated in the legacy to Henry that the one hundred shares of Grendel Mill stock was of the par value of $50.00. He then gave to Earle and Charles, each, fifty shares of the stock of Ware Shoals Manufacturing Company. He did not state the par

value thereof for the reason that all of them knew it to be $100.00 per share. He stated the par value of the Grendel Mill stock in order to explain why he gave to Henry's trust fund double the number of shares he gave to each of his other sons.

Was the stock adeemed *pro tanto,* or is the trust for Henry entitled to a number of shares sufficient to make the value of the fund $5,000.00?

"But in *Chase Nat. Bank v. Deichmiller* (1930), 107 N. J. Eq., 379, 152 A., 697, where, after the execution of a will containing a specific bequest of 800 shares of stock and during the lifetime of the testator, the corporation, by a stock dividend of 50 per cent. and a stock split-up of $2\frac{1}{2}$ shares for 1, multiplied its outstanding shares without thereby increasing its assets, so that, after testator's death, the interest in the corporation formerly represented by 800 of its shares was represented by 3,000 of the new shares, it was held that the legatee was entitled to 3,000 of the new shares. The Court makes no distinction in the rule applicable where the increase in the number of shares is the result of a stock dividend and where such increase is the result of a split-up of the shares and the consequent depreciation of their par value. The Court says : 'It is clear that at the time of the making of the will the total net assets of the corporation were represented by the total number of shares of stock then issued and outstanding, and that each share of stock represented an aliquot part of the total net assets. The acts of the corporation in increasing the number of shares issued, not by selling additional shares in exchange for additional capital, but simply by multiplying the shares of stock outstanding by $3\frac{3}{4}$, without any increase in the net assets, had no other result than this, that the interest in the corporation which theretofore had been represented by one share of old stock was thereafter represented by $3\frac{3}{4}$ shares of the new stock. The thing bequeathed, then, the interest in the corporation represented by 800 shares of stock at the time of execut-

ing the will, was still owned and possessed by testator at the time of his death, slightly changed in form (*i. e.,* being then represented by 3,000 shares of stock), but not sufficiently changed to indicate a change of testamentary intent. The bequest in the will therefore must be deemed to carry the thing bequeathed, in its altered form (*i. e.,* the 3,000 shares).'

"In cases in which an increase in the number of shares bequeathed has been effected by a change in the organization of the corporation or by a splitting of the original shares with a proportional reduction in par value after the making of the will and during the testator's lifetime, a different rule seems to prevail. In such cases the Courts hold that the increased number of shares, in proportion to the number of shares bequeathed, pass to the specific legatee.

"Thus, in *Fidelity Title & T. Co. v. Young* (1924), 101 Conn., 359, 125 A., 871, where stock of a par value of $100.00 was split five for one, and the par value was changed to $20.00, a specific legatee of 125 shares of stock was held entitled to 625 shares after the split. The Court states that a specific legacy of shares of stock owned by the testator at the date of the will necessarily refers to shares then existing.

"So, in *Heckler v. Young* (1931), 264 Ill. App., 34, a bequest of thirty shares of stock was held to carry ninety shares to the legatee where the shares were split three for one, with the consequent reduction in their value to about one third. Here the testatrix knew at the time the will was drawn and executed that the stock was going to be split; and the will provided that, in the event she did not own the stock at the time of her death, the legatee should receive cash equivalent to the market value of the stock as of the date of the will. And see to the same effect *Bireley's Adm'rs v. United Lutheran Church* (1931), 239 Ky., 82, 39 S. W. (2d), 203, where the stock was split four for one, with consequent reduction in par value; *Re Mandelle's Estate* (1930), 252 Mich., 375, 233 N. W., 230,

where the stock was split five for one and shares of no par value substituted; and *Re Martin's Will* (1929), 252 N. Y., 582, 170 N. E., 151 (reversing (1928) 225 App. Div., 724, 231 N. Y. S., 813), where stock was split four for one with a consequent reduction in par value, in all of which the same rule is applied.

"And see an annotation in 63 A. L. R., 639, on the effect on a bequest of shares of stock of the subsequent substitution or change of stock by the corporation." 89 A. L. R., 1131, 1132.

We are frank to say that there is a line of authorities contrary to the above; but we prefer to adopt this one as more in consonance with the intention of the testator.

We concur with the Circuit Judge that it is immaterial to determine whether the legacy is a special or demonstrative one; the intention of the testator as ascertained from his will is the law of the case.

The trust fund to Henry is entitled to have allotted to it, from the shares of the stock of Grendel Mills in the hands of the executor, a number sufficient to make the par value of the trust fund $5,000.00.

The referee held that the trust to Henry continues of force, and that his children take the trust estate subject to the limitations of the trust. In other words, he holds that the trust is in Henry for his lifetime; that the children of Henry take the income therefrom during their father's life, and take the principal of the trust fund at his death. The Cirucit Judge reverses this finding and conclusion of the referee. We concur with the Circuit Judge.

Henry is *"civiliter mortuus,"* which is thus defined by Black's Law Dictionary (3rd Ed.), page 333: "The condition of one who has lost his civil rights and capacities, *and is accounted dead in law."* (Italics added.) Authorities are cited.

Henry is especially denied by the statute (8874 of the Code) the right to take *any interest* in his father's estate.

To say that the trust continues in his favor is to say that if he were pardoned for the murder of his father his right to take the income of the trust would be restored.

The decree of the Circuit Judge clearly disposes of the question of Henry's status if he should be pardoned. He would be restored to citizenship and personal rights, but not to the property rights he has forfeited by his conviction. Therefore it is error to hold that the trust is still vested in him, though he is debarred of its enjoyment. It goes free of the trust to his children.

All exceptions are overruled, and the decree of the Circuit Judge is affirmed.

MR. CHIEF JUSTICE BLEASE, MESSRS. JUSTICES STABLER and CARTER and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.