6678

## COOPER v. COOPER.

Wills.—A testator has two sets of children. At the date of the will the children of the first marriage were of age and had all practically completed their education. None of those of the second marriage were of age, and some of them were of quite tender years. Under a devise to his widow for life, or "so long as she may remain my widow," and at her death or marriage "said property to be equally divided between all of *our* surviving children, or those of them who may

not have completed their education, should there be any such," the remainder is non-transmissible and goes to the children of the second marriage who survived the widow.

Before HYDRICK, J., Sumter, February, 1907. Affirmed.

Action by Robert Muldrow Cooper and Mary Jane Petrie against Francis Pelot Cooper *et al.* The Circuit decree is:

"This is an action for the partition of the tract of land described in the complaint, and incidentally for the construction of the will of George William Cooper.

"Trial by jury was duly waived by consent of the attorneys for all parties.

"The original will is in the handwriting of the testator, and the word 'our,' in the paragraph hereinafter copied, was underscored in the original will by testator. The will is dated July 30, 1874. Testator died April 5, 1875, leaving surviving him his widow, Rose I. Cooper, and nine children, three by a former marriage, viz.: Mary Jane Petrie, William Albert Cooper and Robert Muldrow Cooper, and six by the second and last marriage, viz.: Rosa Leycester Cooper, Francis Pelot Cooper, Edward Wood Cooper, Harriett Cooper Cheyne, Hamilton Witherspoon Cooper and Augustus Thomas Cooper.

"At the date of the second marriage, the children of the first marriage were all quite small, the youngest of them being an infant in arms, who never knew any other mother than his stepmother, who treated the children of the first marriage just as she did her own. The children of the two marriages treated each other just as brothers and sisters of the whole blood, so that the family lived together most amicably.

"After giving the widow $5,000 in cash, or securities, at her option, his best carriage and pair of horses, her saddle pony, all the property which she possessed at the time of their marriage, and all that she had subsequently inherited, the same to be in lieu of dower, the will proceeds as follows:

" 'I give her also a life interest or as long as she remains my widow, an equal portion with my children, as hereinafter named, *i. e.,* a child's portion, of all property, both real and personal, of which I may be possessed at the time of my decease.   She to occupy my dwelling house or houses, with my children, and have exclusive use of all my household and kitchen furniture, and at her death or marriage, said property to be equally divided between all of *our* surviving children, or those of them who may not have completed their education, should there be any such.'

"The residue of the estate is given to his surviving children to be equally divided among them, except Mary Jane Petrie, who is given an equal share only in the real estate, and except also William Albert and Robert Muldrow, of whom the will says:

" 'My sons William A. and Robert M. Cooper, having completed their education, I desire them to receive one-third each of a child's portion of my personal estate besides their full share of my real estate.'

"At the date of the will, the children of the first marriage were all of age and had all practically completed their education.   Robert M. Cooper was at college during the last year of his father's life, but it was his last year at college before graduating, and his education was so nearly completed, that his father regarded it as practically completed, and so states in his will.   At that time, none of the children of the second marriage were of age and some of them were of quite tender years.

"The tract described in the complaint was set apart to the widow, under the provisions of the will above quoted, and occupied by her until her death, which occurred May 13th, 1905.

"The widow was survived by Mary Jane Petrie and Robert Muldrow Cooper, children of the first marriage, and by Francis Pelot Cooper, Harriett Cooper Cheyne, Hamilton Witherspoon Cooper and Augustus Thomas Cooper, children of the second marriage.

"After the death of testator, and before the death of his widow, William Albert and Edward Wood Cooper died, leaving no issue, and Rosa Leycester Cooper, having intermarried with James Read Muldrow, died leaving one child, the defendant Sarah Rosa Muldrow. The defendants Thomas Hasell Dick and George W. Dick are the children of Mary Scott Cooper, the eldest daughter of testator, who intermarried with Thomas Hasell Dick, Senior, and died before her father.

"The questions arising upon the record are:

"1. Whether the remainder to '*our* surviving children' is transmissible; and, 2, whether the children of the first marriage who survive the widow are entitled to share therein.

"I have had no doubt on either point. But in deference to the earnestness and zeal, as well as the ability, with which counsel for plaintiffs maintained their contention, I have given the points careful consideration.

"It is alleged in the complaint, and argued by plaintiff's counsel, that the scheme of the will mainfests an intention of testator that all his property should be equally divided among all his children. That may be so if previous advancements and educational advantages are taken into account, but not otherwise. It is not conceded, however, that absolute equality in the division was intended, at any rate that such intention is to be gathered from the will; for upon the face of the will, it appears that Mrs. Petrie was to get no part of the personal estate and William A. and Robert M. were to get only one-third each of a child's part thereof, for the reason, as stated by the testator as to the two last named, that they had already completed their education.

"Nor does such an intention appear when the will is read in the light of the testimony, from which it appears that testator had two grandchildren, the children of a predeceased daughter, for whom no provision is made. It would be purely speculative to undertake to account for these apparent inequalities. It suffices that it was the testator's will

"Throughout the will, testator uses the pronoun 'my' where it is appropriate to express his intention. In referring to the children of both marriages, he speaks of them as 'my' children. Had he intended to give the remainder in question to all his children, he would not have changed the use of 'my,' and used 'our,' for 'my' would have been the more appropriate word to express that intention. When he abandoned the use of 'my' and used 'our' and underscored it, the conclusion seems inevitable that he meant to emphasize the distinction between the two words, and thereby say to the expositor of his will 'I mean that "our" shall be construed to mean "our" (that is mine and my wife's) in contradistinction to "my" children, which includes the children of both marriages.'

"This intention is made even clearer by the succeeding words, 'or those of them who may not have completed their education, should there be any such;' for having already said that the older set of children had all completed their education, these words show clearly that he meant the remainder to be used in the first contingency, as an educational fund, for the benefit of those children of the second marriage who might not have completed their education at the falling in of the prior estate. If, at that time, there had been some who had completed their education, and some who had not, those who had not would have taken to the exclusion of those who had.

"The intention, though clearly enough expressed in the language of the will, is made even clearer by reading the will in the light of the circumstances of the testator when he penned it.

"As all the children of the second marriage had completed their education prior to the death of the widow, the only remaining contingency was as to which of them would survive the period of distribution. Where the persons who are to take are uncertain, as where it depends upon who shall survive the life tenant, as in this case, the remainder is not

only contingent, but non-transmissible. *Roundtree* v. *Roundtree,* 26 S. C., 450.

"Therefore only the children of the second marriage who survived the widow are entitled to share in the remainder, and it is so ordered, adjudged and decreed.

"Parties may apply for such further orders as may be necessary to carry out these views."

From this decree plaintiffs appeal.

*Messrs. Shand & Shand* and *Haynesworth & Haynesworth,* for appellants. *Messrs. Shand & Shand* cite: *As to construction:* 8 Com. Dig., 425; 6 Ves., 345; 30 Ency., 669; 29 Pa. Sup. Ct., 60; 24 Mo. App., 75; 2 L. R. A., 709; 2 Ves. Sr., 616; 1 P. Wms., 667; 5 M. & S., 131; 2 Beav., 551; 6 Hare, 250; 48 Md., 122; 89 Pa. St., 36; 1 Rich. Eq., 111; 113 N. C., 301. *Circumstances at time will was written and treatment of father and stepmother of the children should be given great weight:* 6 Pet., 76; 2 Const., 436; 71 Ga., 384; 4 Rich. Eq., 455; Harp. Eq., 56; 15 S. C., 357; 19 S. C., 348; 36 S. C., 43; 127 U. S., 309; 50 Am. St. R., 284. *Construction of "all our children":* 113 N. C., 301; 78 N. C., 275; 7 S. C., 290; 6 H. L., 265; 61 At. R., 598; 6 Ves., 348; 23 Pitts Leg. Journ. (N. S.), 451; 79 Pa. St., 431; 9 Tex. Cir. App., 482; 29 Pa. Sup. Ct., 60; 69 Tex., 227; Wig. on Wills, 142; 1 Green Ev., secs. 287, 288; 2 Story Eq. Jur., 1005; 24 Mo. App., 75; 66 Ia., 325; 77 Va., 169; 25 Mo., 70; 177 N. Y., 42; 72 N. E. R., 936; 78 N. Y., 279.

*Messrs. McLeod & Dennis,* contra, for Mrs. Harriet C. Cheyne, cite: *Intention of testator should be gathered from the will itself:* 36 S. C., 42; 29 S. C., 470. *Devise to children does not include grandchildren:* 56 S. C., 9; 2 DeS. Eq., 309; 16 S. C., 225; 21 S. C., 306; 26 S. C., 450; 6 Rich. Eq., 83.

*Mr. James Simons,* contra, for Francis Pelot Cooper, cites: *Rule for arriving at intention of testator:* 26 S. C., 181; 25 S. C., 564; 27 S. C., 295; 29 S. C., 466; 30 S. C., 184; 36 S. C., 38. *As to construction of the word "our":* 25 Mo., 70; 79 N. Y. Supp., 1133; 177 N. Y., 39; 69 N. E., 118. *A condition repugnant to the nature of the estate is void:* 3 Ves., 324; 15 S. C., 442.

*Messrs. Lee & Moise,* contra, for Augustus Thomas Cooper, cite: *Construction of the will:* 8 L. R. A., 740; 26 S. C., 564. *This is disclosed by the language properly interpreted:* 26 S. C., 179, 564, 450; 27 S. C., 295; 29 S. C., 466; 30 S. C., 184; 36 S. C., 38; 46 S. C., 169; 1 DeS., 237; Bail., 7, 517; 2 DeS., 309; 8 L. R. A., 740; 31 U. S., 68; 7 U. S., 97, 134, 572; 113 N. Y., 115; 46 N. J. Eq., 131; 109 Ind., 340. *Punctuation:* 14 S. C., 107; 44 S. C., 424.

October 5, 1907. The opinion of the Court was delivered by

Mr. Justice Woods. The reasoning of the Circuit decree is convincing and we are satisfied to adopt it.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.