15624

JEFFORDS *ET AL. v.* THORNAL *ET AL.*

(29 S. E. (2d), 116)

March, 1943.

*Messrs. Dargan & Paulling,* of Darlington, S. C., Counsel for Appellant,

*Mr. Junius M. McIntosh* and *Mr. C. T. McDonald,* both of Florence, S. C., Counsel for Respondents,

February 17, 1944.

*Per Curiam:*

This action was brought for the purpose of selling the land of James Ira Thornal and for the construction of his will. Thornal, a resident of Darlington County, died on the 18th day of March, 1918. The following excerpt from his will embraces the language in controversy:

"I bequeathed all my lands, tenements, hereditaments, and my household furniture, ready money, securities for money, money secured by life insurance goods, and chattels, and all other parts of my real and personal estate and effects whatsoever and wheresoever, unto my beloved wife, Martha Dora Thornal. To and for her absolute use during her life. I want her to give my sister Martha E. Lechner, and my niece Bertha R. Lechner, a home as long as they can live peaceably together. If she marries again and leaves a child everything goes to it. If she do or do not marry again and leaves no child at her death everything is to be sold. Real and personal to the highest bidder at auction for cash and the money divided, one-half to my brothers and sisters, if they are living, or if they are dead to be equally divided to their children, share and share alike. And one-half to her brothers and sisters if they are living, or if they are dead to be equally divided to their children, share and share alike."

Martha Dora Thornal, the testator's widow and life tenant, did not remarry and died during the month of April, 1942, leaving no child. Thereafter, pursuant to an order in this cause, the testator's land was sold, and this controversy arose out of conflicting claims to one-sixth of the net proceeds thereof, to which Martha Lechner, a sister of the testator, would have been entitled if she had survived the life tenant.

The appellant, Bertha Alexander, is and was at the time of the life tenant's death, the only surviving child of the said Martha Lechner, who survived the testator but died prior to the death of the life tenant, and the respondents are grandchildren of Martha, nephews and nieces (and their representatives) of appellant, whose parents (referred to in the will as "children") predeceased the life tenant.

The decree, from which this appeal was taken, by a process of rather involved reasoning, finds that the parties, including appellant, reconverted the property (if converted into personalty under the terms of the will) from personalty into

real estate again, and the exceptions challenge the correctness of this conclusion. While we find in the record no grounds for such, we think it is immaterial.

Respondents' and appellant's claims to portions of the proceeds of the sale of the land are by way of contingent remainders, and the lower court held that respondents are entitled to share as substituted remaindermen, having substitutional, contingent interests. And it appears that it was deemed necessary for that conclusion to consider the property real estate, despite its prior actual conversion into money. (For a clear definition of "contingent remainder", see *Faber v. Police,* 10 S. C., 376.)

However, the rules of construction applicable to the terms of the will are the same whether the gifts it made are of realty or personalty. *Mendenhall v. Mower,* 16 S. C., 303, which involved the terms of a declaration of trust by the great and famous Judge John Belton O'Neall, and the authority of it was approvingly cited in *Roundtree v. Roundtree,* 26 S. C., 450, 2 S. E., 474, involving the construction of a will. See, also, *Evans v. Adams,* 180 S. C., 214, 185 S. E., 57, and authorities there cited, and *Buist v. Dawes,* 4 Rich. Eq., 415, note.

The learned trial judge also held that the plaintiffs in the action, of which appellant was one, had elected to treat the land as real estate, for their action was in the nature of partition, had elected to pursue that remedy and were thereby estopped to claim the conversion of the land by the will into personalty. Again we think the point is of no importance in the controversy, but there is no sound basis in the record for the finding. Because counsel on both sides argued the question, it has been considered and will be further discussed.

Prior to the decree appealed from the court had ordered the sale of the land (as said above), reciting that such was in accord with the will and that conflicting claims existed with respect to the division of the proceeds of sale, and fur-

ther that the will directed the sale of the land but appointed no one to make the sale, in effect saying that such necessitated the action of the court, and it was expressly provided in the decree that the proceeds of sale should be held for disposition according to the further orders of the court.

It is true that in the complaint it was alleged that the plaintiffs in the action and some of the defendants were tenants in common, but in the complaint were set forth the terms of the will and it cannot be read without concluding that the action was for the purpose of selling in order to distribute the proceeds pursuant to the will. Allegations essential in ordinary partition proceedings were omitted and the procedure therefor (sections 8826-8829 of the Code of 1942) was not followed at all.

The statement in the transcript of record for appeal was prepared by the trial judge and has been very largely followed in the preliminary statement of facts hereinabove. It is noted that it is not said that the action is for partition but that it "was brought for the purpose of selling the land * * * and for the construction of the will." Such is a correct characterization of the action so we do not think that the bringing of it by appellant as one of the plaintiffs should be held to impair her claim to her proper portion of the proceeds of the sale pursuant to the terms of the will. And, as indicated above, the record discloses no representation or conduct on the part of appellant which by any fair application of the principles of estoppel (or "election") should affect her right to assert her legal claim to the proceeds as against the conflicting contentions of the respondents. Anyway, the doctrine of conversion is ordinarily important only to determine inheritance, whether by heirs-at-law or personal representatives. *Ex parte Lowrance,* 133 S. C., 103, 130 S. E., 343.

The cardinal principle governing the construction of wills is, as many times said, to find and effectuate the intention of the testator, if such intention is not

contrary to law or public policy. There are, of course, rules of interpretation which have been arrived at by the courts over centuries of consideration of such cases and which are useful as guides in seeking testamentary intention, but these rules are servants, not masters, and they yield to the stated rule of intention when the latter is ascertainable and is not illegal. *Peoples Nat. Bank v. Harrison,* 198 S. C., 457, 18 S. E. (2d), 1. Happily, in this case the apparent intention coincides with the applicable legal rule of construction, as will be seen.

The will is not difficult to understand; indeed, its intention appears manifest. Incidentally, while written by one unlettered, it is ideal in the fairness of its plan of distribution. Undoubtedly, the remainders to the brothers and sisters, contingent upon the death childless of the widow, were contingent also upon the survival at the time of such brothers and sisters, for the testator expressly so provided by use of the phrase, "if they are living." It is, we think, easily implicable that similar contingency with respect to their chilren was intended by the testator when he said in his will that "if they are dead to be equally divided to their children," etc. In the words of Justice McIver in *Roundtree v. Roundtree, supra* [26 S. C., 450, 2 S. E., 477], "the inference seems irresistible." The testator did not intend to avoid a deceased beneficiary and take instead another in the same condition. The second class (children) was manifestly named to insure living beneficiaries.

The contrary contention of respondents is tantamount to inserting after the last-quoted clause of the will, using its terminology, "or if any of the latter are dead to be equally divided to their children (or their representatives)." It is patent that if such had been the intention of testator he would have again used that clause or its equivalent for he was familiar with its meaning, having just used it to provide representation to the children of the brothers and sisters, but he refrained from its use with respect to these children, who

were his grandnephews and grandnieces. Furthermore, respondents' contended construction would make the remainders to the children (testator's nephews and nieces) transmissible, whereas admittedly the remainders in their parents were not transmissible, the latter under the express terms of the will. No word is found in the will which indicates any intention on the part of testator to make the interests of his nephews and nieces transmissible.

The intention found then, is to the effect that the interests of testator's nephews and nieces were contingent upon their survival at the time of the death childless of the widow; such interests were, therefore, not transmissible; and respondents, representatives of those deceased in the lifetime of the life tenant, take nothing. Their aunt, the appellant, takes what their respective parents would have taken, had they survived the life tenant.

Turning to the pertinent rules of law we find them to be in complete accord with the foregoing construction of testator's intention, evidenced by his will. The following is quoted from 69 C. J., 252, Wills, par. 1274.

"Where, however, not merely the possession but also the creation of the right is postponed, futurity being annexed not alone to the time of distribution or enjoyment but to the substance of the gift, ordinarily the appropriate time for fixing the membership of the class is the date when the gift vests in right or interest unless a contrary intention on the part of the testator appears, and only those coming within the description at that time are members of the class so that persons dying or otherwise ceasing to answer the class description before that time are not included in the class to which the gift is made."

Cited in the footnotes to sustain portions of the foregoing are the following cases from this court: *Davis v. Davis,* 144 S. C., 205, 142 S. E., 496; *Cooper v. Cooper,* 78 S. C., 317, 58 S. E., 950.

Contingent remainders which are transmissible and those which are not are clearly distinguished in the opinion of this court in *Roundtree v. Roundtree, supra.* The rule is there thus defined:

"Where the person to take in remainder is ascertained, and it is only the event upon which such person is to take that is uncertain, there the estate in remainder becomes · transmissible to the heirs of the remainder-man, upon the happening of the event upon which such ascertained person was to take, even though such event may not happen until after the death of the person named, or otherwise sufficiently designated as remainder-man. But, where the person to take is uncertain, then the estate cannot become transmissible until the estate becomes vested by the happening of the contingency."

In the case at bar certainly the persons to take in remainder could not be ascertained until the primary contingency, the death of the life tenant childless, happened, for at any time before, the remaindermen as to the moiety now in question might have been all of the brothers and sisters of testator; when one brother or sister died there were substituted, if living, his or her children, and under what we consider the proper construction of the terms of the will, impliedly the surviving children took to the exclusion of a predeceased child and its representatives. But resort need not be had to this implication, however clear it is, for expressly, under the terms of the will, the brothers and sisters had to be living at the time of the death of the life tenant in order to take, so their number and identity were uncertain; thus, clearly, in accord with the rule set forth above the remainders were not transmissible.

The doubly contingent gifts by testator to the children of his brothers and sisters were to classes, respectively. The beneficiaries were not named or otherwise identified, except as stated, to wit, children of his brothers and sisters; and they were upon the contingency of the

prior death, in the lifetime of the life tenant, of their respective parents, the whole of the gifts being upon the further (in fact, primary) contingency of the death of the life tenant without a child. Fitting then is the following language of the decree on circuit of the presiding Judge, the Honorable Thomas S. Sease (who happens to be an Acting Associate Justice of this Court at the hearing and decision of this case), which was adopted with approval in the appeal *In re Warren's Will*, 176 S. C., 455, 180 S. E., 458, 459:

"Where there is a gift to a class, at a certain time, or upon the happening of a certain event, only those in existence at such period can take; the predeceased ones, or their representatives are excluded. *Corbett v. Laurens,* 5 Rich. Eq., 301, 324; *Dickson v. Dickson,* 23 S. C., 216, 224."

In oral argument one of the counsel for respondents urged that the case is controlled by the decision of this court in *Dent v. Dent,* 113 S. C., 416, 102 S. E., 715, but upon examination we find little similarity. In that case testator divided his property equally among his brothers (and the children of one then deceased), naming them executors. After execution of the will another of his brothers died and testator executed a codicil reciting such and substituting this deceased brother's son as one of the executors, but did not in the codicil expressly provide for the substitution of the children of the last deceased brother as beneficiaries of the will. A bare majority of the court held that the codiciliary substitution of the recently deceased brother's son as an executor so strongly showed that the substitution was intended also to make beneficiaries of the children of that deceased brother that they were allowed to come in by way of substitution for their dead father, this despite the ordinary rules of construction. This statement of the facts and result of the decision demonstrates its present inapplicability.

The case bears some likeness to our recent decision in *Youmans v. West* (S. C.), 28 S. E. (2d), 47, where death of a legatee during the administration of the estate lapsed a

legacy and it went over ratably to the survivors of the class under the terms of the will. That controversy was ruled by application of the language of the will, as is this.

The exceptions are sustained and the judgment reversed; appellant takes the contested fund to the exclusion of respondents; and the case is remanded to the Circuit Court for further proceedings consistent herewith. .

MR. CHIEF JUSTICE BAKER, MESSRS. ASSOCIATE JUSTICES FISHBURNE and STUKES, and CIRCUIT JUDGES SEASE and HENDERSON, ACTING ASSOCIATE JUSTICES, concur.