17139

O. W. PADGETT, JR., and JACK P. PADGETT, Respondents, v. WALTER BLACK *ET AL.,* of whom Walter Black and C. G. Padgett, Jr., as Executors of the Will of Cora May Black Campbell and Walter Black, in his own right, Appellants.

(92 S. E. (2d) 153)

*Messrs. Bogoslow & Howell,* of Walterboro, *for Appellants,*

*Messrs. Heber R. Padgett* and *Padgett & Moorer,* of Walterboro, for Respondents,

April 2, 1956.

Moss, Justice.

This action is one for a declaratory judgment to construe the Will of Cora May Black Campbell, deceased, and for directions as to the distribution of the residuary estate. Such action is authorized by Section 10-2003 of the 1952 Code of Laws of South Carolina. The record shows that all possible heirs at law or persons who would take under the Will are before the Court.

Cora May Black Campbell, late a resident of Colleton County, died testate on May 26, 1953, leaving of force and effect her last Will and Testament dated April 28, 1953, which was duly admitted to probate in the Probate Court for said County.

We are called upon on this appeal to construe of Item Four of the said will, the residuary clause thereof, which provides that such residuary estate be divided into eight equal parts or shares and the last section of said Item provides as follows:

"One-eighth (1/8) part to be paid to the child of my deceased sister, Elizabeth B. Padgett, to him absolutely and forever."

The parties to the action entered into a stipulation of facts by which it was agreed that at the time of the execution of the will by the testatrix "that the only child of her deceased sister, Elizabeth B. Padgett, to wit: Oliver Wendell Padgett, Sr., was dead, he having died on or about November, 1950, and knew that his only children surviving him were the plaintiffs in this action, O. W. Padgett, Jr., and Jack P. Padgett."

Upon the pleadings and the stipulation this cause was heard and determined by the Trial Judge and thereafter he filed his Decree construing the Will and finding for the plaintiffs.

The case comes before this Court upon four exceptions to the Decree of the Trial Judge and these exceptions pose

three questions, as follows: 1. Is a legacy to a person who was dead at the time of the making of a will void and ineffective? 2. Does a legacy to a person who died prior to death of testatrix and prior to the execution of her will lapse when the bequest contains no words of substitution nor survivorship and does not pass by operation of any statute? 3. Did testatrix intend that a portion of her residuary estate should go to plaintiffs? They will be disposed of in the order stated.

We approach the construction of this Will keeping in mind the rules by which we are governed in reaching a conclusion.

In the case of *Rogers v. Rogers,* 221 S. C. 360, 70 S. E. (2d) 637, 640, this Court said:

"It is elementary that the cardinal rule of construction is to ascertain and effectuate the intention of the testator, unless that intention contravenes some well-settled rule of law or public policy. While there are certain rules of construction to be followed in seeking such intention, they are subservient to the paramount consideration of determining what he meant by the terms used in his will. *Peoples National Bank [of Greenville] v. Harrison,* 198 S. C. 457, 18 S. E. (2d) 1. The same underlying principle was stated by Chief Justice Marshall in *Smith v. Bell,* 6 Pet. 68, 8 L. Ed. 322, as follows: 'The first and great rule in the exposition of wills (to which all other rules must bend) is that the intention of the testator expressed in his will shall prevail, provided it be consistent with the rules of law' ".

"At common law a testamentary gift to one who was dead at the time the Will was made was void. This rule has been modified in many American jurisdictions by statutes." 57 Am. Jur., 145.

The rule as to the effect of a legacy to a dead person at the time of the making of the Will is stated in 69 C. J. 1066, as follows:

"The general rule, in the absence of any statutory provision to the contrary, is that a legacy, or devise to a person who is dead at the time of the making of the will is void, or, it has been said, lapses, and it is immaterial to the operation of the rule that the testator knew when the will was made that the legatee was dead."

And again from 69 C. J., 1065, we find the following:

"(f) Gifts to Persons Dead at Date of Will—aa. In General. Statutes intended to prevent a lapse by the death of the devisee or legatee before the testator are sometimes construed not to apply where the devisee or legatee was dead when the will was executed. Other cases, however, have repudiated this rule and hold that, in furtherance of what may be presumed to have been the intention of the testator, the statues apply notwithstanding the death of the devisee or legatee before the execution of the will. Of course, where the case is expressly provided for by the statute, there is no distinction between the issue of a devisee who dies before the making of the will and one who dies after it."

South Carolina does not have an anti-lapse statute under which the plaintiffs may claim, so that any statement of the law as to the application of a statute in which a legatee was dead prior to the making of the will cannot apply in this case. Our anti-lapse statute provides:

"If any child should die in the lifetime of the father or mother, leaving issue, any legacy of personalty or devise of real estate given in the last will and testament of such father or mother shall go to such issue, unless such deceased child was equally portioned with the other children by the father or mother when living." Sec. 19-237, 1952 Code of Laws of South Carolina.

By the express terms of the statute, in order for it to be applied, the legacy must be given to a child by the will of the father or mother; such child must have died leaving issue and such child must not have been equally portioned with the other children by the father or mother

when living. Thus, it is seen by the express terms of the statute its provisions are limited to a case which a father or mother by will gives a legacy or a devise to a child and such child dies in the lifetime of the parents leaving issue.

In the case of *Hatcher v. Robertson,* 4 Strob. Eq., 179 it appears that a testator willed and bequeathed to six named persons certain slaves to be equally divided between them and their heirs forever, and three of the said legatees had died before the execution of the will, which was unknown to the testator. The Court held that the bequests to the three deceased legatees lapsed and passed to the residuary legatees. The Court said:

"If a legacy to a tenant in common would lapse where the legatee died before the testator, and after the execution of his will, it seems clear that the same result would happen where the intended recipient of the testator's bounty was actually dead at the execution of the will: it might, perhaps, more properly be called an ineffectual than a lapsed legacy. There were no such persons in existence at the date of the will, and nothing passed, or could pass, to them, or be transmitted through them. And it seems to be a necessary consequence, that the subject-matter of such a legacy would become either intestate property, or would fail under the residuary clause of the will."

And again from the case of *Hatcher v. Robertson, supra:*

"It was also contended, that there will be no lapse where the testator did not intend it, and provided a substitute. This legal proposition is perfectly correct; but it must not only appear that the testator did intend that the legacy should not lapse, but it must appear equally clear that he has provided a substitute to take in the event of the failure of the primary object of his beneficence. In this case, however, I appeal in vain to the terms, of the will for any such indication of intention on the part of the testator. The words 'to them and their heirs forever,' occurring after the words 'equally to be divided between them,' are not substitutional,

but are simply words of limitation, indicating the quantity of the estate intended to be created."

In the case of *Pegues v. Pegues,* 11 Rich. Eq. 554, it appears that the testator died in 1857 leaving of force and effect his will executed in 1852, by the terms of which he left a money legacy to his son Malachi Pegues and also willed him a share of the residuary estate. This son was dead at the time of the execution of the will. His children claimed the pecuniary legacy and also the share of the residuary estate. This claim was resisted. The Court held that the anti-lapse statute was intended to prevent a lapse arising from the death of the legatee after the execution of the will. Chancellor Johnstone, in delivering the opinion of the Court, stated:

"It (the statute) contemplates the case of a legacy *given:* —that is, a provision made for the child of such a character as would be valid if the will should come forthwith into operation. Such a legacy being *given,* the statute goes on to provide, that if the child (thus provided for) *should die,* then the legacy *given* to him shall go to his issue—unless, &c. This language seems to be intended to describe a case (not uncommon), where a legatee *should* happen to die, after the execution of a will in his favor, by which casualty his personal enjoyment of the intended bounty would be frustrated. I can hardly suppose the legislature contemplated the case of a man's giving a legacy to a dead child—or that it intended to remedy the effect of such an absurdity.

"It may be very well conceived that it intended to make good a legacy which had *become* void, without going the length of supposing it intended to give effect to one which was void *ab initio.*"

In the case of *Key v. Weathersbee,* 43 S. C. 414, 21 S. E. 324, 328, we find the following:

"Now, as a will speaks at the death of the testator, it is clear that in these cases no precedent life estate was ever really created, inasmuch as the proposed life tenant was

dead at the time the will took effect, for a devise or bequest to a person deceased at the time is void *ab initio* (*Pegues v. Pegues,* 11 Rich. Eq. 554).''

In the case of *Suber v. Nash,* 84 S. C. 12, 65 S. E. 947, it appears that the testatrix in her will, after making bequests to her five children by name and making no mention of her son Beverly Nash, who died prior to the execution of her will, provided for the division of the proceeds of certain property among '' 'all my children,' '' the child or children of a deceased child to take the share its or their parents would have been entitled to if living, and by a subsequent paragraph provided for a division of the proceeds of other property among '' 'all of my children aforesaid,' '' the child or children of a deceased child to take its or their parent's share. The Court held that there was no gift to Beverly, which under the anti-lapse statute, would go to his children. It further stated that the statute does not apply where the child was dead when the will was executed. The Court cited as authority the case of *Pegues v. Pegues, supra.*

The Trial Judge, in reaching his conclusion, found that the testatrix knew at the time of the making of her will that the only child that her deceased sister, Elizabeth B. Padgett had, died about three years before and that the plaintiffs were the only children of such child; that she did not intend to die intestate; that she intended by Item Four of her will to dispose of the residue of her estate; that she intended for the eight branches of her immediate kindred each to take one-eighth part in the residue; that no branch would receive a greater amount than any other branch of the family; that if the one-eighth part designated to the son of Elizabeth B. Padgett is invalid, then this branch of the family would take nothing and defeat her manifest intention that this branch should be represented. He finds also that the general scheme of the will was such that the testatrix intended that the children of Oliver W. Padgett, Sr., the only child of Elizabeth B. Padgett, should take

their father's part. He cites as supporting his findings the cases of *Deveaux v. Barnwell,* 1 Desaus. Eq. 497, *Dent v. Dent,* 113 S. C. 416, 102 S. E. 715, and *Ex parte Newton,* 183 S. C. 379, 191 S. E. 59, 65.

The *Deveaux v. Barnwell case, supra,* does not appear to be apposite, because there the testator's children were alive at the time he made his will, but two of them died before the testator, leaving issue. It is apparent, therefore, that at the time of the making of the will, a valid bequest had been made. The Court found that the share to which the parents were entitled should go to his grandchildren, based upon a strong presumption that he intended that his grandchildren should stand in the place of their parents.

In the cases of *Dent v. Dent* and *Ex parte Newton, supra,* the wills were executed prior to the death of the legatee and codicils executed after such death showed an intent to prevent a lapse under the scheme of both the will and the codicil. In the Newton case it is said "in each the legacy would have lapsed but for a codicil." A codicil is not here involved In the three cases above referred to the legatees were all alive at the time of the execution of the wills and died subsequent thereto, but in this case the legatee was dead at the time of the execution of the will.

It should be borne in mind that in the *Dent v. Dent case, supra,* that the beneficiary was dead when the codicil was made and by implication and inference the intention of the testator was declared to be that the child of the deceased should take in his stead.

This Court in *Jeffords v. Thornal,* 204 S. C. 257, 29 S. E. (2d) 116, 119, had this to say in discussing the *Dent case:*

"In that case testator divided his property equally among his brothers (and the children of one then deceased), naming them executors. After execution of the will another of his brothers died and testator executed a codicil reciting such and substituting this deceased brother's son as one

of the executors, but did not in the codicil expressly provide for the substitution of the children of the last deceased brother as beneficiaries of the will. A bare majority of the court held that the codiciliary substitution of the recently deceased brother's son as an executor so strongly showed that the substitution was intended also to make beneficiaries of the children of that deceased brother that they were allowed to come in by way of substitution for their dead father, this despite the ordinary rules of construction."

It is apparent in the *Dent case* that the substitution of the deceased brother's son as executor was the chief determining fact in the decision. The court relied heavily upon such substitution to infer an intent on the part of the testator to make beneficiaries, under the will, the children of the deceased brother. We do not have that element in this case.

We cannot but reach the conclusion that where a legacy is given to one dead at the time of the making of the will that such is void *ab initio* and hence ineffective.

It should be noted that the contested section of the will in this case does not provide for the distribution of the legacy in the event of the death of the legatee before the legacy is received. In other words, the testatrix did not substitute a beneficiary in the event "the child of my deceased sister" did not take the legacy.

In the recent case of *Cornelson v. Vance,* 220 S. C. 47, 66 S. E. (2d) 421, 425, the court said:

"There can be no question that the general rule is that if one to whom a legacy is given by will dies before the death of the testator the legacy lapses, but there are exceptions to this rule. If the will which gives the legacy provides for the distribution of the legacy in the event of the death of the legatee before the legacy is received, the law will recognize such direction as the will of the testator and give effect to it."

To the same effect see *Power v. Power,* 219 S. C. 56, 64 S. E. (2d) 14; *Rasor v. Rasor,* 173 S. C. 365, 175 S. E. 545.

In the case of *Duncan v. Harper,* 4 S. C. 76, it appears that William Duncan executed a will in which he made a bequest, as follows:

"To my daughter, Eliza Jane Williams, one thousand dollars; this one thousand dollars I give to my daughter Eliza Jane Williams, together with the negro girl Emily, which I have given her, I give to her and her bodily issue."

The court in construing the aforesaid provision, said:

"The doctrine of lapse, as applied to legacies, cannot be interposed for the solution of the rather novel question which arises in this case. The person named as legatee was not only dead at the date of the execution of the will, but the testator long before had knowledge of the fact. The disposition in favor of the daughter, or of any who could claim by or through her, was senseless, absurd and nugatory.

"If, however, from a construction of the words permitted by the rules applicable to the interpretation of wills, they can be held to confer a direct gift to the children, not transferred through the parent, who could not take by reason of her death before the date of the will, such effect should be given to the legacy as will save it from falling into the residuary estate."

In the case of *Duncan v. Harper, supra,* the court, in construing the clause above referred to, held that by the term "bodily issue" the testator meant "children"; and that by "and" he meant "or" and hence the children of Eliza Jane Williams were entitled to the legacy by direct gift to them and was not transferred through the daughter.

In the instant case the testatrix did not provide a substitute legatee in the event of the death of the child of her deceased sister. Had the testatrix done so, the court would give effect and permit such substituted legatee to take. In the absence of such provision the court cannot supply such a substitution.

The appellants contend that under the proper interpretation of the will in question, that the testatrix did not intend

that her great nephews, the respondents herein, should take the legacy bequeathed to their father.

In determining the intent of the testatrix and in reaching a proper construction of a will, a primary resort to the words used by the testatrix is required. The inference as to a testator's intent should be such as to leave no hesitation in the mind of the court and must not rest upon speculation or conjecture. The true intent must be gathered from the four corners of the will.

Since the meaning of the words in a will is determined by the context thereof, interpreted as a whole, we observe the following from said will, keeping in mind that the respondents herein are great nephews of the testatrix. The will contemplates no gift to any other great nephew or great niece. In each section of Item Four, when a one-eighth is given to a living brother or sister of the testatrix, a substitutionary provision is made, which provides that on the death of such living brother or sister, then the share so bequeathed went to the children of such brother or sister living at the time of the death of the testatrix. This, of course, means that under those Items only the surviving nieces and nephews would take. It also appears that when the parent, that is a brother or sister of the testatrix was not living, she willed a one-eighth share to the children of such deceased brother or sister, share and share alike. No substitutionary provision was inserted for the benefit of a great nephew or great niece. It is clear from this provision that a great nephew or great niece could not take, even though the parent of such predeceased the testatrix.

Attention is also directed to Item Three of the said will where the textatrix made a specific bequest to O. W. Padgett, Jr., and Jack P. Padgett, respondents herein, and to each of them she gave the sum of $500.00.

If a construction of the contested clause was given the effect by which the respondents herein were permitted to take the one-eighth share bequeathed to "the child of my

deceased sister, Elizabeth B. Padgett", such would give to the respondents a greater portion of the estate than that to be received by the nieces and nephews of the testatrix under the substitutionary provision herein referred to. We cannot conclude that the testatrix intended such a result.

We reach the conclusion that the legacy to "the child of my deceased sister, Elizabeth B. Padgett, to him absolutely and forever" was void *ab initio,* ineffective and inoperative, for the reason that the legatee was dead at the time of the execution of the will. The respondents cannot take by reason of any substitutionary provision, there being none in the will. There is no applicable statute under which they can take. There was no intention on the part of the testatrix that her great nephews should take the portion of the residuary estate bequeathed to their father.

Generally, a lapsed or void legacy falls into the residuum but since the legacy here is a part of the residuum itself, it must be distributed as intestate property.

In the case of *Davis v. Davis,* 208 S. C. 182, 37 S. E. (2d) 530, 532, the court said:

"This presents the question of whether a void devise and legacy, which is part of the residuary clause of a will, pass under the remaining portion of the same residuary clause or whether it becomes intestate property and distributable to the heirs at law of the testator?

"To the rule that a general residuary clause will carry lapsed or ineffectual bequests of personal property; and also devises of real estate, there is the exception that lapsed or ineffectual legacies or devises of a portion of the residuary estate itself, where the residuary clause is to several devisees or legatees in common, do not inure to the benefit of the residuary legatees or devisees, but the interest of the deceased becomes intestate estate, and as such passes to the next of kin or heirs at law of the testator."

For the foregoing reasons we are of opinion that the decree of the Trial Judge should be reversed and the case remanded to the Court below for further proceedings consistent with the conclusions herein announced.

Reversed.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.