## 17608

M. F. WOODWARD and Eloise G. Waters, Individually and as Executrix under the Will of Roy Waters, Plaintiffs, v. William Barry CAGLE and Frances Virginia Cagle, minors under the age of fourteen years, Alice Joellen Cagle, James V. Cagle, Osborne Barry Cagle, Anna Cagle Houghton, Virginia Beatrice Cagle Lee, Delores Jane Cagle Webb, Doris Jean Cagle Callahan, J. W. Cagle, Jr., all of whom are sued individually and as representatives of the class of the issue of the children of Jacob Washington Cagle, deceased, and as representatives of the class of heirs at law and devisees of Jacob Washington Cagle, deceased, James O'Keefe Cagle, Jacob Washington Cagle, Frances S. Cagle, Alice Louise Cagle and Hilda S. Cagle, Defendants, of whom William Barry Cagle and Frances Virginia Cagle are Appellants, and M. F. Woodward and Eloise G. Waters are Respondents.

(112 S. E. (2d) 480)

*George F. Townes, Esq.,* of Greenville, *for Appellants,*

*Messrs. Love, Thornton & Arnold,* of Greenville, *for Respondents,*

February 2, 1960.

Moss, Justice.

Jacob Washington Cagle died on December 20, 1910, leaving of force and effect his last will and testament, which was validly executed and duly admitted to probate in the Probate Court for Greenville County, South Carolina. At the time of the death of the said testator he was seized and possessed of a tract of land known as the old "Parkins Home Place". He made a testamentary disposition of this property, as follows:

"5. I will and devise the old Parkins Home Place containing 263 acres, more or less, situated about four miles from the City of Greenville and made up of four separate tracts, 167 acres from Mrs. C. C. Jones, 70 acres from B. M. McGee, 8 acres from C. C. Jones and 18 acres from Mrs. Lupo, to my son Alexander Cagle, for and during the term of his natural life and at his death to his widow for life and at her death to his children absolutely *per stirpes*. In default of such children the same shall vest in my executors to be disposed of as provided in paragraph Six (6).

"6. I devise the block of stores known as the Cagle Block, at the corner of Main Street and McBee Avenue, in the City of Greenville, to my executors, as Trustees, upon the following trusts: To hold and manage the same, keeping it in proper repair and improvement, until the youngest child of my sons Osborne, Alexander and Wilkins, shall have attained majority, and until the deaths of my said sons; in the meantime to pay annually the net income thereof according to the plan of division directed in paragraph 3, during the joint lives of my said sons. Should either of my sons Alexander or Wilkins die leaving a wife or a wife and child or children the widow for life and the child or children in remainder shall represent the son dying and the said income shall be distributed accordingly until the period above limited shall be reached; should either die leaving neither wife nor child, the income shall be distributed for the time being among the survivor of my said two sons and the chil-

dren of my son Osborne in the manner directed in this paragraph, until the period above limited shall be reached. Upon the death of the last survivor of my three sons, my executors are directed to sell said property as their discretion may dictate and divide the proceeds *per stirpes,* among the children of my said three sons, the child or children of a deceased child to take the parent's share."

At the time of the death of Jacob Washington Cagle, he left three surviving sons, Alexander Cagle, the son mentioned in Item 5 of his will, who died April 26, 1931, without children, Wilkins Cagle, who died in May, 1956, without children, and Osborne Cagle, who died June 29, 1954, survived by four children, Jacob Washington Cagle, James O'Keefe Cagle, Alice Louise Cagle, and Mable Virginia Cagle; of these four children all are living except Mable Virginia Cagle, who died September 29, 1958, devising her interest in the property of Jacob Washington Cagle to Hilda S. Cagle, for life, with remainder to Alice Louise Cagle.

It is clear from paragraph 5 of the will of Jacob Washington Cagle that he left a life estate to his son, Alexander Cagle, and a succeeding life estate to Lillie Cagle, the widow of his said son. Lillie Cagle, the widow of Alexander Cagle, subsequently remarried and is now Lillie C. Carter. It is admitted by all parties to this action that the said Lillie C. Carter is now living and has a life estate in the "Parkins Home Place".

As is above stated, Alexander Cagle died without children, and under paragraph 5 of said will, it is provided: "In default of such children the same shall vest in my executors to be disposed of as provided in paragraph Six (6)." Paragraph 6 directs the executors, after the testator's youngest grandchild attains twenty-one years of age, and after the death of the last of the testator's three sons, both of which events have now occurred, to sell the land passing under said paragraph and "divide the proceeds *per stirpes* among the children of my said three sons, the child or children of a deceased child to take the parent's share." It appears from

the record that the South Carolina National Bank of Charleston, as administrator with will annexed, *de bonis non,* of the estate of J. W. Cagle, deceased, and as trustee under said will, in compliance with the terms of Item 6 of said will, did, on October 10, 1957, convey along with other property, the "Parkins Home Place", subject to the life estate of Lillie Cagle Carter, the widow of the said Alexander Cagle, to Jacob Washington Cagle, James O'Keefe Cagle, Alice Louise Cagle and Mable Virginia Cagle. This deed recites that the aforesaid grantees, being entitled to all the proceeds from the sale of said premises, have requested that the property be conveyed to them in lieu of being sold by the executors and a division of the proceeds of said sale made. It appears from the record that J. W. Cagle, by deed dated June 7, 1958, conveyed to Frances S. Cagle, his wife, all of his interest in the "Parkins Home Place". It also appears that the said Frances S. Cagle obtained an interest in said property by virtue of a deed or assignment by Mable Virginia Cagle.

The records shows that on March 11, 1959, that J. O. Cagle, J. W. Cagle, and his wife, Frances S. Cagle, Alice Cagle and Hilda S. Cagle, executed to Roy Waters and M. F. Woodward an option to purchase a tract of land containing 157 acres, being a portion of the "Parkins Home Place", subject, however, to the life estate of Lillie C. Carter, at an agreed price of $240,000.00.

This action was instituted by M. F. Woodward and Roy Waters, the holders of the aforesaid option, seeking a construction of the will of Jacob Washington Cagle, and asking the Court to decree that J. O. Cagle, J. W. Cagle, and his wife, Frances S. Cagle, Alice Louise Cagle and Hilda S. Cagle owned a fee simple title to said property, subject only to the life estate of Lillie C. Carter. The complaint alleges that M. F. Woodward and Roy Waters intend to exercise the option granted to them if the parties executing same are vested with a fee simple title to said property, subject to the life estate of Lillie C. Carter. All of the parties execut-

ing the option were joined as defendants in said action, together with all of the living remote issue of Jacob Washington Cagle, who were sued individually and as representatives of a class of the issue of the children, and as representatives of a class of the heirs at law and devisees of Jacob Washington Cagle, deceased. It appears that proper service of the summons and complaint was had upon all of the parties to the action. All of the defendants have appeared in the case and answered with the exception of four adult defendants, who are in default. The two minor defendants, William Barry Cagle, a son of James O'Keefe Cagle, and Frances Virginia Cagle, a daughter of Jacob Washington Cagle, are represented by George F. Townes, their duly appointed guardian *ad litem*.

It further appears from the record that during the pendency of this action, that Roy Waters, one of the plaintiffs, died, and that Eloise G. Waters, the sole beneficiary of, and the executrix under the will of the said Roy Waters, was substituted as a party plaintiff and this action was continued.

This case was tried before the Honorable T. B. Greneker, Presiding Judge, on October 26, 1959, at which time testimony was taken and various exhibits offered in evidence. The Court found that all persons who have or may claim any interest in the property of Jacob Washington Cagle, either under his will, or as an heir, have been made parties to the suit. The interest of other remote heirs or remote devisees was represented by the great-grandchildren of the testator, who were sued individually and as a class. *Cf. Caine v. Griffin,* 232 S. C. 562, 103 S. E. (2d) 37.

The issue before the lower Court was whether James O'Keefe Cagle, Jacob Washington Cagle, Frances S. Cagle, Alice Louise Cagle and Hilda S. Cagle had, under the will of Jacob Washington Cagle, a vested fee-simple title in the property of the testator, subject to the life estate of Lillie C. Carter. The trial Judge held that the trust set up in Item 6 of the will of the testator terminated upon the death of the testator's three sons, and the attainment of the age of

twenty-one years by his youngest grandchild. He likewise held that James O'Keefe Cagle, Jacob Washington Cagle, Frances S. Cagle, Alice Louise Cagle and Hilda S. Cagle owned a vested fee-simple title in the property described in paragraph 5 of the will of J. W. Cagle, and could convey such to the holders of the aforesaid option, subject only to the life estate of Lillie C. Carter. From this ruling William Barry Cagle and Frances Virginia Cagle, through their duly appointed guardian *ad litem,* have appealed to this Court, and assert that the trial Judge should have held that the trust set up in paragraph 6 of the will of the testator should have been construed to continue until the happening of three events: (a) the death of the testator's three sons, (b) the attainment of the age of twenty-one years by the youngest grandchild of the testator, and (c) the death of Lillie C. Carter, the holder of a life estate in said property. It is asserted that upon the happening of all three events, then the trustees would have the right to sell the property free of all trusts and life estates, and to divide the proceeds among the grandchildren then living, the child or children of any deceased grandchild to take the parent's share. It is asserted that this construction accords with the expressed intent of the testator.

In the case of *Rikard v. Miller,* 231 S. C. 98, 97 S. E. (2d) 257, 259, we said:

"It is a fundamental rule that in construing the provisions of a will, the intention of the testator at the time the will is executed, is the primary inquiry of the Court. *Roundtree v. Roundtree,* 26 S. C. 450, 2 S. E. 474. In arriving at the intention of the testator, the will must be read and considered as a whole. *Watson v. Wall,* 229 S. C. 500, 93 S. E. (2d) 918; *Padgett v. Black,* 229 S. C. 142, 92 S. E. (2d) 153."

In the case of *Rogers v. Rogers,* 221 S. C. 360, 70 S. E. (2d) 637, 640, this Court said:

"It is elementary that the cardinal rule of construction is to ascertain and effectuate the intention of the testator, unless that intention contravenes some well-settled rule of law or

public policy. While there are certain rules of construction to be followed in seeking such intention, they are subservient to the paramount consideration of determining what he meant by the terms used in his will. *Peoples National Bank of Greenville v. Harrison,* 198 S. C. 457, 18 S. E. (2d) 1. The same underlying principle was stated by Chief Justice Marshall in *Smith v. Bell,* 6 Pet. 68, 8 L. Ed. 322, as follows: 'The first and great rule in the exposition of wills (to which all other rules must bend) is that the intention of the testator expressed in his will shall prevail, provided it be consistent with the rules of law'."

It is clear that by Item 5 of his will the testator left a life estate to his son Alexander Cagle, and a succeeding life estate to the widow of Alexander Cagle, and a remainder to the children of Alexander Cagle. This remainder to the children was of necessity contingent since no children were born to Alexander Cagle. If a child had been born to Alexander Cagle, there is no doubt that this remainder would have vested immediately in such child, subject to partial defeasance in the event of the birth of additional children. By providing in Item 5 that in default of children being born to Alexander Cagle, an alternative or substitutional remainder was made by the provision that the property would be disposed of as provided for in Item 6 of said will. Item 6 of said will directs the executor and the trustee named therein to sell this property upon the youngest grandchild attaining twenty-one years of age and upon the death of the last survivor of the three sons of the testator.

It is noted from Item 6 of the will of the testator that the trustees were directed to hold the legal title to certain property known as the "Cagle Block" for a specified period, such being until the attainment of the age of twenty-one years by all of the grandchildren of the testator, and until the death of the testator's three sons. It is undisputed that all of the grandchildren have attained the age of twenty-one years, and that Wilkins Cagle, the last surviving son of the testator, died in May, 1956. During the period of the

trust, the trustees were instructed to perform various trust duties not pertinent to this decision. However, when the termination date was reached, the testator directed the executor and trustee to sell the property in question and divide the proceeds *per stirpes* among the testator's grandchildren, the child or children of a predeceased grandchild to take their parent's share. We think the intention of the testator as to this is clear and unambiguous.

The appellants argue that it was the intention of the testator that the trust in the "Parkins Home Place" should continue until the death of Lillie C. Carter, the life tenant, and that at her death the trust property was to be sold and the proceeds divided among the beneficiaries then in being. We do not agree with this contention because it is contrary to the expressed intention of the testator contained in Item 6 of his said will, which provides for a termination of the trust when the youngest child of his sons shall have attained majority and upon the death of his three said sons. Therefore, the trust terminated upon the death of Wilkins Cagle in May, 1956, and at such time all of the children of Osborne Cagle had reached their majority. It is unnecessary for us to decide the date when the children of Osborne Cagle, the grandchildren of Jacob Washington Cagle, took a vested fee in right or interest, subject to the life estate of Lillie C. Carter, but certainly it was no later than the death of Wilkins Cagle, who died in May, 1956. Assuming, but not deciding, that the interest of the children of Osborne Cagle, in the "Parkins Home Place", was a contingent remainder, such was converted into a vested remainder and became transmissible upon the death of Wilkins Cagle, the last surviving son of the testator.

We conclude that it was the intention of the testator, as expressed in his said will, that the "Parkins Home Place" was devised to his son, Alexander Cagle, for life, then to Lillie Cagle Carter for life, with the remainder in trust until the death of the testator's three sons, and the attainment of majority by the testator's grandchildren. The record con-

clusively shows that the three sons of the testator are now dead and that at the time of the death of the last son of the testator all of the grandchildren of the testator were twenty-one years of age, thereupon, the title to the "Parkins Home Place" vested in fee in such surviving children, subject to the life estate of Lillie C. Carter. This accords with the clear intention of the testator. Under this construction the appellants, who are the great grandchildren of the testator, whose parents are living, take no interest in the "Parkins Home Place" under the will of the testator.

In *Faber v. Police,* 10 S. C. 376, it was said:

"*   *   * According to the elementary writers a vested remainder is one which is limited to an ascertained person in being, whose right to the estate is fixed and certain, and does not depend upon the happening of any future event, but whose enjoyment in possession is postponed to some future time.   *   *   *"

In the case of *Roux v. Chaplin*, 1 Strob. Eq. 129, 20 S. C. Eq. 129, it was held that a vested remainder may be transferred by deed, conveying the present legal title, though not the present right of possession.

In the case of *Dobson v. Smith,* 213 S. C. 15, 48 S. E. (2d) 607, 611, this Court held:

"*   *   * However, a life tenant and a vested remainderman in fee may join in a deed which will effectively convey the fee and therefore, the immediate right to possession; and the principle is applicable here. It is said in 33 Am. Jur. 615, Life Estates, etc., Sec. 150, Inter Vivos Alienation, as follows: 'Remaindermen who have a vested remainder in fee, limited upon a precedent life estate, can, with the cooperation of the life tenant, convey a good title to the whole property.'   *   *   *"

We conclude that James O'Keefe Cagle, Jacob Washington Cagle, Frances S. Cagle, Alice Louise Cagle and Hilda S. Cagle own a vested remainder in fee to the property described in Item 5 of the last will and testament of J. W.

Cagle, subject only to the life estate of Lillie C. Carter, and that the said owners of the vested remainder in fee may convey such to M. F. Woodward and Eloise G. Waters in the event they exercise the right under their option to purchase the tract of land carved out of the "Parkins Home Place".

The exceptions of the appellants are overruled and the judgment of the lower Court is affirmed.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.