220 S.C. 47 (1951)
66 S.E.2d 421
CORNELSON ET AL.
v.
VANCE ET AL.
16530
Supreme Court of South Carolina.
August 8, 1951.
*48 Messrs. C.T. Graydon, of Columbia, and O.L. Long and Babb & Babb, of Laurens, for Appellants.
Messrs. Blackwell, Sullivan & Wilson, of Laurens, and Willard D. Campbell, of Columbus, Ohio, for Respondents.
*49 The following is the opinion of Judge Griffith in the Court below:
This action was brought for the construction of the Will of Miss Toccoa Bailey as it relates to certain items hereinafter mentioned. The testatrix died on May 8, 1948, leaving her last Will and Testament dated November 2, 1943, which was as follows, omitting the formal parts:
"I. I will and direct that all of my just debts be paid by my Executor hereinafter named.
"II. I will and direct that my Executor hereinafter named plead the Statute of Limitations of the State of South Carolina to any claims presented against my estate, to which the Statute is a bar.
"III. I will and bequeath to the Clinton Presbyterian Church of Clinton, South Carolina the sum of One Thousand ($1,000.00) dollars.
"IV. I also direct that a suitable tomb be erected over my grave to cost approximately $1,000.00.
"V. To my niece, Mercer B. Wise, I give and bequeath the house and lot known as the Sallie Motes house, and which I inherited by will from my cousin, Sallie Motes, and facing on Pitts Street and lying on the west side of my home place. To make this lot longer and more valuable I also give to her the small strip of land lying on the west side of the Sallie Motes house and lot and which is to extend on *50 the West side to the full length of the original Sallie Motes property. Said strip of land bounded as follows: On the North and East by lands owned by me, on the South by Pitts Street and west by lands of Mary B. Vance.
"Also Ten (10) shares of the stock of the Clinton Cotton Mills, Forty (40) shares of Preferred stock of the Lydia Cotton Mills.
"VI. To my brother William J. Bailey and my sisters, Emma B. Cornelson and Mary B. Vance, I give and bequeath my holdings of stock of M.S. Bailey & Son, Bankers, one-third each, my interest in this Bank being one-seventh of the one-half of the capital stock as follows  $200,000.00, one-seventh being $28,571.40, this being the book value of my interest at this time. I request that this interest be offered to my brother, William J. Bailey, if he desires to purchase it.
"VII. To my sister, Emma B. Cornelson, I give and bequeath my house and lot where I now reside. One-half of my house furnishings, household and kitchen furniture, including one-half of my personal effects, this division to be made between Emma B. Cornelson and Mary B. Vance. This being the home where I now reside and said lot being bounded on the North by Academy Street, East by Elizabeth Street, South by Pitts Street and West by the Sallie Motes house and lot and lands of Mary B. Vance. All with the exception of the Sallie Motes lot and dwelling thereon, together with a strip of land lying on the west of the Sallie Motes lot, as far as my land extends on the west side of the Sallie Motes lot so as to square her lot and which has previously been mentioned in this Will as having been willed to my niece Mercer B. Wise.
"I also give and bequeath to Emma B. Cornelson, my sister, 25 shares stock of the Clinton Cotton Mills, 150 Shares Preferred 6% stock of the Lydia Cotton Mills.
"VIII. To my sister, Mary B. Vance, I give and bequeath 53 shares of the Clinton Cotton Mills, 164 8/10 shares Preferred stock of the Lydia Cotton Mills, together with one-half of my house furnishings, household and kitchen furniture, *51 including one-half of my personal effects, this division to be made between themselves  Mary B. Vance and Emma B. Cornelson.
"IX. To my niece, Toccoa Wise, I give and bequeath 10 shares stock of the Clinton Cotton Mills, 25 Shares Preferred stock of the Lydia Cotton Mills.
"X. To my nephew, Robert M. Vance, I give and bequeath 10 shares stock of the Clinton Cotton Mills, 40 shares Preferred stock of the Lydia Cotton Mills.
"XI. To my niece, Rosanna V. Campbell, I give and bequeath 10 shares stock of the Clinton Cotton Mills, 40 shares Preferred stock of the Lydia Cotton Mills.
"XII. To my brother William J. Bailey I give and bequeath the following property: "66 shares stock of the Clinton Cotton Mills, 200 shares 6% Preferred stock of the Lydia Cotton Mills, 100 shares General Motors Corporation, 449 shares Common Stock of the Lydia Cotton Mills, 1 House and lot situate on the west side of Bell Street containing one or more acres and now occupied by John Lee, colored, 115 acres of Real Estate located in Cross Hill Township and about four miles from the Town of Cross Hill, S.C. formerly known as a part of the R.C. Wade land and at this time is rented to John Henry Nance.
"In case of the death of my brother, William J. Bailey, before me, the above property is to be divided between my two sisters, Emma B. Cornelson and Mary B. Vance.
"XIII. I hereby constitute and appoint my brother, William J. Bailey, Executor, and hereby clothe him with full power to carry out the terms and provisions thereof, with the right and power to sell and convey any real estate that I may own at the time of my death, and execute good and sufficient titles thereto to the purchaser or purchasers."
It is admitted that at the time of her death she was the owner of all of the property described in the Will with the exception of the preferred stock of Lydia Cotton Mills mentioned in Items V, VII, VIII, IX, X, XI, and XII of the *52 Will and one hundred (100) Shares of General Motors Corporation. It is also admitted that at the time the Will was executed she did not own Six hundred fifty-nine and 8/10 (659.8) Shares of the preferred stock of Lydia Cotton Mills, the amount bequeathed, but that she was the owner of Six hundred forty-nine and 8/10 (649.8) shares thereof represented by the following certificates for the number of shares set opposite each:

No. 132 .... .... .... .... .... . 51.5 shares
No. 187 .... .... .... .... .... . 16.8 "
No. 227 .... .... .... .... .... . 72.4 "
No. 278 .... .... .... .... .... . 100. "
No. 279 .... .... .... .... .... . 100. "
No. 280 .... .... .... .... .... . 67. "
No. 310 .... .... .... .... .... . 31.7 "
No. 321 .... .... .... .... .... . 7.4 "
No. 327 .... .... .... .... .... . 3. "
No. 360 .... .... .... .... .... . 100. "
No. 374 .... .... .... .... .... . 100. "
 ___________
Total .... .... .... .... ... . . 649.8 "

The record does not show whether the testatrix owned, or did not own, at the time she made her will, the 100 Shares of General Motors Corporation, and if she ever owned it what disposition was made of it prior to her death.
It is admitted that on or about November 4, 1947 (four years after the testatrix had made her Will and six months before she died), the Lydia Cotton Mills, pursuant to a provision contained in its preferred stock, redeemed all of its said stock, and, on said date, issued to the testatrix herein its check for the sum of Eighty-nine thousand five hundred twenty-nine and 44/100 dollars ($89,529.44) in redemption of the six hundred forty-nine and 8/10 (649.8) shares of stock owned by her in said mill. The check and the statement connected therewith had this notation on the back: "Preferred stock  $64,980.00, Dividends accrued  $18.844.20. Interest  $5.705.24." This check was deposited in the *53 bank of M.S. Bailey & Son, Bankers, of which William J. Bailey was the President and in which Miss Toccoa Bailey owned a large interest, on December 30, 1947, to the account of "Miss Toccoa Bailey (Special)". There was no distinction made in the deposit between the amount of the check representing the value of the Preferred stock and the amount representing payment of dividends and interest.
It is further admitted that the following checks, and no other, were drawn by the testatrix on this account:

1-14-48 Check to Internal Revenue Dept.... ... $7,500.00
3-12-48 Check to Internal Revenue Dept.... ... 1,341.05
3-12-48 Check to S.C. Tax Commission .... ... 2,129.36

It is admitted that these checks represent payments by the testatrix on her Income Taxes for the year 1947. She had already made quarterly payments on her Estimated Income in the amount of $1,000.00 each on March 15th, June 15th and September 15, 1947, to the Internal Revenue Department.
In addition to the property described in the Will, the Inventory and Appraisement of the estate of the testatrix show that she died seized and possessed of stocks in several corporations, bonds and choses-in-action in a considerable amount. She also owned other real estate and nineteen separate parcels of land as tenant-in-common with others. As one of the legatees under the Will of her father, M.S. Bailey, she was entitled to receive a considerable sum of money from income from the bank and from rents from the property still standing in the name of the estate of M.S. Bailey. M.S. Bailey was the father of the testatrix and of William J. Bailey and it appears that a large part of this property came from his estate. He died in the early twenties and at the time of her death his estate had never been settled. The return shows that at the time of the death of the testatrix she had two other accounts in M.S. Bailey & Son, Bankers, one an ordinary deposit in the sum of $3,375.80 and another of $91.59 marked "Special".
*54 On or about the 11th day of April, 1948, William J. Bailey died testate and by the terms his Will Miss Toccoa Bailey was devised and bequeathed a very large legacy, the amount of which had not been determined at the time of the death of the testatrix herein. This item has been appraised at $214,201.24.
It will be observed that the Will contains no residuary clause nor does it attempt to dispose of any of the property of the testatrix other than that specifically named in the Will. I shall refer to all property owned by her at the time of her death, other than that passing under the Will, as the "residuary estate" for the purpose of this Order.
The pleadings and stipulations in this case raise the following questions:
1st. Did the bequest to William J. Bailey in Paragraph Six of the Will in which he was bequeathed a one-third interest in the share of the testatrix in the firm of M.S. Bailey & Son, Bankers, lapse upon his death or did it pass to his sisters, Mrs. Emma B. Cornelson and Mrs. Mary B. Vance?
2nd. Are the legacies of the preferred stock in the Lydia Cotton Mills general, demonstrative, or specific legacies, and if they are specific, do they lapse as a result of the corporation redeeming the stock?
3rd. Do the legacy and devises received by Miss Toccoa Bailey under the Will of her brother, William J. Bailey, go to the legatees and devisees named in the Will of Miss Toccoa Bailey or do they pass into the residuary estate and, therefore, distributable under the law as intestate property?
4th. What funds are to be used for the payment of administrative costs, attorneys' fees, taxes, etc.?
The distributees, other than those who are legatees and devisees under the will, contend that all of the questions raised herein should be decided so that all the property affected shall be thrown into the residuary estate and distributed *55 as intestate property. I shall, therefore, for convenience refer to the ones taking the contrary position as "legatees" and the ones taking this position as "distributees", I shall dispose of the questions in the order above mentioned.
There can be no question that the general rule is that if one to whom a legacy is given by will dies before the death of the testator the legacy lapses but there are exceptions to this rule. If the will which gives the legacy provides for the distribution of the legacy in the event of the death of the legatee before the legacy is received, the law will recognize such direction as the Will of the testator and give effect to it. The attorney for the legatees of this item concedes that this is the law but he contends that by the last paragraph of Item Twelve that testatrix did provide for the distribution of the legacy in the event of the death of W.J. Bailey. It is contended that this paragraph not only refers to the property mentioned in paragraph twelve but that it referred also to that described in paragraph six. In my opinion, and I so hold, the words "the above property" in the last paragraph of item twelve refers only to the property described in that item and the legacy of William J. Bailey mentioned in paragraph six lapses and passes as intestate property.
Coming to a consideration of question two, the distributees base their contention, that these legacies of preferred stock of the Lydia Mill were adeemed, upon the ground that such legacies are specific, and not general or demonstrative, legacies. If that contention fails their position falls.
"Courts are averse to declaring a legacy specific unless the language of the will clearly shows that such was the intention of the testator." White v. White, 73 S.C. 261, 53 S.E. 371, 372. This rule of law was enunciated by our Court at least as early as 1811, in Cogdell Ex'rs v. Cogdell's Heirs, 3 Desaus. 346. And in a recent case, our Court declared that "* * * it is immaterial to determine whether the legacy is a special or *56 demonstrative one; the intention of the testator as ascertained from his will is the law of the case." Rasor v. Rasor, 173 S.C. 365, 175 S.E. 545, 550.
Looking at the will, I do not see anything that indicates that the testatrix intended these legacies to be specific ones; and in my judgment there is no basis for saying that the will and surrounding circumstances "clearly show" such an intention. To me it "clearly" appears that the testatrix intended that these legatees should share a portion of her estate, and that the shares of stock were units of value by which the several portions would be partly measured. The authorities generally, although there are some to the contrary, support this view:
"In accordance with the general principle that a legacy designated primarily by quantity or amount is prima facie general, the doctrine is well established that bequests (1), of a stated sum `of' or `in' the stock of a particular corporation, (2) of a stated number of the shares of the stock of such a corporation, or (3) of a stated sum `in', or a designated number of, a specified kind of bonds, notes, or other securities, are, in the absence of contrary testatorial intention, to be regarded as general or demonstrative rather than specific. Generally speaking the circumstance that the testator at the time he made his will owned a sufficient amount of the stock or bonds designated to satisfy a bequest of the kinds enumerated is held not to be enough to render the gift specific, even if the amount owned is the exact amount bequeathed." Am. Jur., Vol. 57, Section 1411, page 943; See also Alexander on Wills, Volume 2, page 979, Section 653.
The value of these shares of stock is, of course, the amount which was paid for their redemption by the corporation, to wit: $64,980.00, and does not include the amounts paid at that time as dividends and interest thereon. The dividends and interest paid go into the residuary estate and will be distributed as intestate property.
*57 The third question involves the portion of the estate of William J. Bailey which was given to the testatrix herein by the terms of his will. Counsel for the legatees rely almost entirely on Section 8910 of the 1942 South Carolina Code. It cannot be disputed that after-acquired property passes under the will if there is any provision of the will covering it. If this will contained a residuary clause, or if it gave to any named person or persons specific property which was thus thereafter acquired by the testatrix, then it would pass under the will but this will had no residuary clause and covered no certain well-defined property after-acquired. In addition to the property described in the will, the inventory shows that she owned an undivided interest in nineteen (19) tracts of land and the following items of personal property:

1/7 of the rentals of M.S. Bailey property .... $ 6,658.42
1/7 of 1947 profits of M.S. Bailey & Son,
 Bankers (M.S. Bailey Estate) .... .... . . 8,301.64
Rentals from estate of J.A. Bailey and F.C. Bailey
 (1/28 part) .... .... .... .... ... .... .. 431.54
Life insurance-proceeds policies on life of William
 J. Bailey .... .... .... .... .... ... .... 7,231.00
2 shares of Manufacturers' Finance Company
8 shares National Bank of Newberry
4 shares Woodside Mill, Common $2,000.00
 Bonds of Brazil appraised at $460.00
$2,000.00 Bonds of Bolivia appraised at $130.00
$1,000.00 Southern Railway bond appraised at
 $940.00
$3,000.00 Bonds of Chilean Government appraised
 at $660.00
$1,000.00 Bond of Republic of Bolivia appraised
 at $56.25
Promissory note of Wm. P. Jacobs $510.85

*58 This in addition to those described in the will and in addition to the bequest from William J. Bailey amounting to the appraised value of $214,201.24. There is no question as to her testamentary capacity and we, therefore, must assume that she knew the extent of her estate. The law gave her the right to dispose of this property by will. If she did not care to specify each article she could have covered it all with a provision for the residuary estate. This she failed to do. In such cases the law provides for the distribution of that portion of the estate not disposed of by will as intestate property. Courts cannot make wills nor can they conjecture as to the intention of the testatrix.
There was no apparent attempt by testatrix to avoid partial intestacy. We cannot gather from the will any intent on her part to give the legatees the residuary estate which included the legacy from the estate of William J. Bailey. The legacy received from her brother must be added to the other intestate property and be distributed as such.
The phrase, "my personal effects", used in both item seven and eight of the will, are claimed by those legatees to be, in effect, a disposal by the testatrix of all her personal estate not otherwise disposed of by the will. But, obviously, I think, such a construction is unsound. Grist v. Craig, 142 S.C. 407, 141 S.E. 26.
Lastly, the plaintiffs ask for instructions as to what funds shall be used to pay administrative costs, attorneys' fees, taxes, etc. The intestate property should be used first, Gist v. Craig, supra. And in view of the fact that the intestate property is of considerable value, it will probably be sufficient for such purposes. But this case shall remain open for the determination of any question properly arising and not finally determined herein, and plaintiffs shall have leave to apply to the Court for further guidance and approval of such steps as they may think proper.
*59 August 8, 1951.
FISHBURNE, Justice.
This is a suit in equity, brought by the plaintiffs as administrators with the will annexed, to obtain a judicial construction of the will of Miss Toccoa Bailey, who died on May 8, 1948. The cause was heard before the Circuit Judge upon the pleadings, exhibits, and stipulation of facts. The main question involved in this appeal is wheather the bequests of Six Hundred Fifty-Nine and Eight-Tenths shares of the preferred stock of Lydia Cotton Mills, mentioned in Paragraphs 5, 7, 8, 9, 10, 11, and 12 of the will of Miss Bailey are specific legacies; and, if so, were adeemed and lapsed when this stock was redeemed prior to her death.
The trial court held that the bequests referred to were not specific legacies, and therefore not adeemed. The appellants seek a reversal of this holding.
In our opinion, the decree rendered by Judge Steve C. Griffith in this case, contains a full and comprehensive statement of the facts, together with the applicable law, and soundly and correctly decides the issues presented.
The exceptions are overruled, and the Circuit Decree stands affirmed as the judgment of this Court.
BAKER, C.J., and STUKES, TAYLOR, and OXNER, JJ., concur.