543 S.E.2d 251

**BOB JONES UNIVERSITY, Roy Barton as Personal Representative, and John T. Nimmons, III, of whom Bob Jones University and Roy Barton as Personal Representative are, Appellants,**

v.

**Sandra M. STRANDELL, Larry M. Nimmons, Jr. and Christopher Nimmons, Respondents.**

No. 3288.

Court of Appeals of South Carolina.

Heard Jan. 8, 2001.

Decided Jan. 22, 2001.

Rehearing Denied March 12, 2001.

S. Allan Hill, of Temple, Mann, Briggs & Hill, of Greenville, for appellants.

James R. Gilreath, of The Gilreath Law Firm, of Greenville, for respondents.

ANDERSON, Judge:

Bob Jones University and Roy Barton, the personal representative of the estate of Larry Mitchell Nimmons ("Appellants"), appeal the decision of the Probate Court, later affirmed by the Circuit Court, which held the proceeds of a life insurance policy passed by intestacy to Nimmons' children. We affirm.

### FACTS/PROCEDURAL BACKGROUND

Nimmons died on September 6, 1997. His will, executed on January 15, 1991, was admitted to probate. In the will, Nimmons nominated the Director of Financial Affairs of Bob Jones University as the personal representative of his estate.

Barton, Bob Jones' Chief Financial Officer, was appointed to the position. Item II of the will directed the payment of all estate, inheritance, succession, death or similar taxes, other than generation-skipping taxes, be paid out of the residuary estate. Item III provided:

> I give and bequeath all of my personal and household effects of every kind, including, but not limited to, furniture, appliances, furnishings, pictures, silverware, china, glass, vehicles, and all policies of fire, burglary, property damage, and other insurance on or in connection with the use of this property to Bob Jones University, Greenville, South Carolina[,] to be used in a scholarship fund for needy students, with the understanding that if any of my children or grandchildren choose to attend Bob Jones University at any time, they may apply the interest in the said fund to their expenses of room, board, tuition, books, or other fees to Bob Jones University. These benefits shall continue to inure to each of my children and grandchildren until each reaches the age of twenty-five. I hereby declare that I have considered my children, and have decided to dispose of my estate as stated herein due to numerous circumstances.

The will did not include a residuary clause or any other devise.

Nimmons had a life insurance policy in the amount of $156,000. His estate was named the beneficiary. His estate also included various items of personal property valued at $4,753.71 and $246.97 in cash.

Three of Nimmons' four children ("the Children") brought this action for construction of the will. The Children asserted the cash, the proceeds from the life insurance policy, and any asset that could be identified and located, except personal and household effects, should pass to them by way of intestacy. They additionally requested the court bar Bob Jones University from paying from the residuary estate its attorneys' fees incurred in this action. The Children also sought a court order requiring Appellants to provide them with a list of assets removed from the house Nimmons rented at the time of his death.

The Children filed a motion *in limine,* asking the court exclude extrinsic evidence at the hearing on the petition to

construe the will. As support for their motion, the Children asserted Appellants were in default because they did not timely answer the petition for construction of the will. They additionally argued extrinsic evidence was not admissible to prove intent under the circumstances of this case.

The Probate Court conducted a hearing on the motion *in limine*. The court set aside the entry of default. It found, however, the will did not contain any latent ambiguity that would allow the court to consider testimony or other evidence regarding Nimmons' intent. Accordingly, the court held Appellants were precluded from introducing extrinsic evidence regarding Nimmons' intent in making his will.

At a subsequent hearing, the Probate Court allowed Appellants to proffer the extrinsic evidence it previously excluded. Marvin Hembry, one of the witnesses to the will, testified Nimmons told him he was leaving his estate to Bob Jones because someone at the university had treated him well. Hembry stated Nimmons did not mention his children at all.

As well, Appellants proffered the testimony of Charles Hofstra. Hofstra was the attorney who drafted the will. In his testimony, Hofstra averred his understanding was that because Nimmons had no real estate and Bob Jones University was to be the recipient of the entire estate, no residuary clause was needed. He explained he thought Item III would cover the entire estate.

In its final order, the Probate Court reiterated the will contained no latent ambiguity that would allow the court to consider extrinsic evidence of Nimmons' intent. It held the life insurance proceeds did not fall within the general classification of property described in Item III of the will. It concluded that as the will disposed of only part of the estate and had no residuary clause, there was a partial intestacy. Therefore, the proceeds of the life insurance would pass by intestacy to Nimmons' four children. The court additionally ordered Barton to furnish the Children with a detailed list of the property removed from the house in which Nimmons lived at the time of his death. Appellants appealed to the Circuit Court, which affirmed the Probate Court's decision. This appeal followed.

## STANDARD OF REVIEW

■■■ This is an action at law. *NationsBank of South Carolina v. Greenwood,* 321 S.C. 386, 468 S.E.2d 658 (Ct.App. 1996) (holding an action to construe a will is an action at law). If a proceeding in the Probate Court is in the nature of an action at law, review by the Circuit Court and this Court extends merely to the correction of errors of law. *See Townes Assocs. v. City of Greenville,* 266 S.C. 81, 221 S.E.2d 773 (1976) (stating appellate review of an action at law is limited to correcting errors of law). The factual findings of the Probate Court will not be disturbed on appeal unless a review of the record reveals there is no evidence reasonably supporting the court's findings. *Matter of Howard,* 315 S.C. 356, 434 S.E.2d 254 (1993).

## ISSUE

Did the Probate Court err by concluding Nimmons' will did not contain any ambiguity, thus precluding the introduction of extrinsic evidence regarding Nimmons' intent when drafting the document?

## LAW/ANALYSIS

Appellants argue the Probate Court erred in ruling no ambiguity exists in Nimmons' will. We disagree.

■■■ The cardinal rule of will construction is the determination of the testator's intent. *Matter of Clark,* 308 S.C. 328, 417 S.E.2d 856 (1992). In construing the language of a will, the reviewing tribunal must give the words contained in the document their ordinary and plain meaning unless it is clear the testator intended a different sense or such meaning would lead to an inconsistency with the testator's declared intention. *In re Estate of Fabian,* 326 S.C. 349, 483 S.E.2d 474 (Ct.App. 1997). In construing a will, a court's first reference is always to the will's language itself. *Fenzel v. Floyd,* 289 S.C. 495, 347 S.E.2d 105 (Ct.App.1986). Where the will's terms or provisions are ambiguous, the court may resort to extrinsic evidence to resolve the ambiguity. *Id.*

■■■ There are two types of ambiguities found in construing wills:

Ambiguities ... are patent and latent; the distinction being that in the former case the uncertainty is one which arises upon the words of the ... instrument as looked at in themselves, and before any attempt is made to apply them to the object which they describe, while in the latter case the uncertainty arises, not upon the words of the ... instrument as looked at in themselves, but upon those words when applied to the object or subject which they describe.

*Fabian,* 326 S.C. at 353, 483 S.E.2d at 476 (quoting *Jennings v. Talbert,* 77 S.C. 454, 456, 58 S.E. 420, 421 (1907)).

▉▉▉ A court may admit extrinsic evidence to determine whether a latent ambiguity exists. *Id.* Once the court finds a latent ambiguity, extrinsic evidence is also permitted to help the court determine the testator's intent. *Id.*

Appellants assert the distinction between latent and patent ambiguities is no longer viable. We find no indication this distinction has been abandoned by our courts. We hold the law as set forth in *In re Estate of Fabian* is still valid in this state. Furthermore, Appellants concede that any ambiguity in the will would be latent. Accordingly, their argument concerning the existence of a distinction between latent and patent ambiguities is irrelevant to our determination of whether the Probate Court erred in failing to consider extrinsic evidence of Nimmons' intent.

▉▉▉▉ Appellants contend the will is internally inconsistent and therefore ambiguous because Item II directs payment of estate taxes from the residuary estate when there is no residuary clause. A "residuary estate," however, is not the equivalent of a "residuary clause." *Compare Black's Law Dictionary* 1309 (6th ed.1990) ("reduary clause" is a "[c]lause in [a] will by which that part of property is disposed of which remains after satisfying bequests and devises.") *with Cornelson v. Vance,* 220 S.C. 47, 54, 66 S.E.2d 421, 424 (1951) (defining "residuary estate" as "[A]ll property owned by [the decedent] at the time of ... death, other than that passing under the Will ...."). A testator may have a "residuary estate" even though the will contains no "residuary clause." When a testator fails to include a residuary clause in the will, the law provides for the distribution of that portion of the estate not disposed of by will as intestate property. *See*

S.C.Code Ann. § 62–2–101 (1987) ("Any part of the estate of a decedent not effectively disposed of by his will passes to his heirs as prescribed [by the sections concerning intestate succession]."); *Cornelson,* 220 S.C. at 58, 66 S.E.2d at 426 (stating that if the testator does not choose to devise property by express provision in the testator's will, the testator may dispose of assets by use of a residuary clause—when no such clause exists, disposition will be accomplished via the laws of intestacy). Although the law engages a presumption against intestacy, this presumption may be overcome by the facts and plain language of the testator's will. *Albergotti v. Summers,* 203 S.C. 137, 26 S.E.2d 395 (1943); *In re Estate of Blankenship,* 336 S.C. 103, 518 S.E.2d 615 (Ct.App.1999).

 The proceeds of the life insurance policy are clearly not within the classification of "personal and household effects of every kind, including, but not limited to, furniture, appliances, furnishings, pictures, silverware, china, glass, vehicles, and all policies of fire, burglary, property damage, and other insurance on or in connection with the use of this property" devised in Item III, which is the only devise in the will. Nimmons made no attempt to avoid a partial intestacy through a residuary clause. We find no indication Nimmons intended to disinherit his children.

The Probate Court permitted Appellants to proffer witness testimony concerning the drafting of Nimmons' will. This evidence was extrinsic. We find no evidence of a latent ambiguity from the profferred testimony.

 Because we find no ambiguity in the will when considering the proffered evidence, we hold the Probate Court's failure to consider extrinsic evidence in determining the existence of a latent ambiguity was harmless. *See McKissick v. J.F. Cleckley & Co.,* 325 S.C. 327, 479 S.E.2d 67 (Ct.App.1996) (ruling appellant seeking reversal must show both error and prejudice).

 Lastly, this Court cannot hold the failure to specifically devise the proceeds of the life insurance or to include a residuary clause in the will was merely a "scrivener's error." *Cf. Fenzel v. Floyd,* 289 S.C. 495, 347 S.E.2d 105 (Ct.App.1986) (holding extrinsic evidence is also admissible to prove and

correct a scrivener's error). "Courts cannot make wills nor can they conjecture as to the intention of the [testator]." *Cornelson,* 220 S.C. at 58, 66 S.E.2d at 426.

## CONCLUSION

We find no latent ambiguity in the will. The Probate Court did not err in refusing to consider extrinsic evidence of Nimmons' intent. Additionally, we hold the Probate Court did not commit reversible error by failing to evaluate Appellant's extrinsic evidence for purposes of discovering the existence of any latent ambiguity in Nimmons' will. Considering only the plain language of the will, we hold the proceeds of the life insurance policy are not "personal and household effects," as devised in Item III. The insurance proceeds, therefore, are part of the residuary estate. Because the will does not include a residuary clause, the residuary estate passes by intestacy. Accordingly, the Probate Court did not err in ruling the proceeds of the life insurance policy passed by intestacy to Nimmons' children.

**AFFIRMED.**

HEARN, C.J. and STILWELL, J., concur.