# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Vanessa Williams, Vanessa Williams as Conservator and Guardian of Sandra P. Perkins, and Vanessa Williams as Personal Representative of the Estate of Sandra P. Perkins, Respondent,

v.

Bradford Q. Jeffcoat, Jr. and Blue Heron Builders, LLC, Defendants,

Of whom Bradford Q. Jeffcoat, Jr. is the Petitioner.

Appellate Case No. 2021-001296

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Charleston County
Mikell R. Scarborough, Master-in-Equity

---

Opinion No. 28236
Heard November 14, 2023 – Filed September 18, 2024

---

## REVERSED IN PART, AFFIRMED AS MODIFIED IN PART, AND REMANDED

---

Jason Scott Luck, of Luck VI Ltd. Co., of Bennettsville, for Petitioner.

Timothy Alan Domin, of Clawson and Staubes, LLC, of Charleston, for Respondent.

---

**JUSTICE JAMES:** The Charleston County Master-in-Equity granted summary judgment to Respondent Vanessa Williams and ordered the partition by sale of real property purportedly held by Williams and Petitioner Bradford Jeffcoat as tenants in common. The court of appeals affirmed. *Williams v. Jeffcoat*, 434 S.C. 461, 863 S.E.2d 822 (Ct. App. 2021). We reverse in part, affirm as modified in part, and remand to the master.

## BACKGROUND

In the mid-1990's, Jeffcoat and Sandra Perkins (Williams' mother) began a roughly two-decade relationship but never married. In April 2000, Jeffcoat purchased a house and lot in Charleston (the Property). On July 1, 2000, Jeffcoat executed a deed conveying the Property to himself and Perkins "jointly with right of survivorship, and not as tenants in common." Jeffcoat and Perkins resided together at that location until 2015.

In 2009, Perkins developed dementia. Jeffcoat served as Perkins' sole caregiver until hiring an in-home aide. In the spring of 2015, Perkins' health rapidly declined. Jeffcoat asked Williams, Perkins' only child, to come to Charleston from her home in Alabama to help care for Perkins. Soon after arriving in Charleston, Williams was added to Perkins' checking account. Williams used Perkins' funds to pay for Perkins' medical appointments but also allegedly used Perkins' money to pay for Williams' own expenses, including the closing costs on a mobile home in Alabama, living expenses totaling around $2,200 per month, and Williams' daughter's college tuition.

During her five weeks in South Carolina, Williams helped care for Perkins and took Perkins to medical appointments. On June 16, 2015, Williams was scheduled to take Perkins to a doctor in Charleston. Instead, without telling Jeffcoat, Williams took Perkins to live with her in Alabama. Perkins resided with Williams in Alabama until Perkins' death later that year. Jeffcoat swears by affidavit that Williams shut Jeffcoat out of Perkins' life and gave him no information regarding Perkins' whereabouts or condition despite his repeated attempts to contact them.

In July 2015, without notifying Jeffcoat, Williams filed a petition for general guardianship and conservatorship in the Baldwin County, Alabama probate court to "protect and manage the person, assets and financial affairs of . . . Perkins."  The petition did not mention Jeffcoat or Perkins' approximately fifteen years of residence with Jeffcoat in South Carolina.  The Alabama probate court subsequently granted letters of guardianship and conservatorship to Williams, authorizing Williams to "discharge all the functions attached to said guardianship/conservatorship."

On November 16, 2015, Williams, acting as Perkins' guardian and conservator, deeded Perkins' interest in the Property to herself, individually, for $10.00 "and love and affection," thus allegedly severing the joint tenancy between Perkins and Jeffcoat and creating a tenancy in common between Williams and Jeffcoat.  Perkins died on November 26, 2015.  On January 11, 2016, forty-six days after Perkins' death, Williams filed a motion in the Alabama probate court to retroactively approve the prior transfer of the Property.  Perkins' guardian ad litem filed a response not opposing Williams' motion.  The Alabama probate court issued an order approving the prior conveyance.

On November 24, 2015 (two days before Perkins' death), Williams commenced this action, individually and as Perkins' guardian and conservator, against Jeffcoat in the Charleston County court of common pleas, asking the court to compel partition of the Property by allotment or sale.  Jeffcoat answered, asserting affirmative defenses of failure to state a claim, unclean hands, and lack of standing, and counterclaims for fraud, breach of fiduciary duty, and slander of title.

Williams later amended her complaint to also appear as the personal representative of Perkins' estate.  In April 2018, Williams moved for partial summary judgment, arguing a joint tenancy can be severed by a cotenant's unilateral conveyance to a third party under South Carolina law and that Alabama law permits a conservator to collect, hold, and retain a ward's property without prior court approval.  Jeffcoat also moved for summary judgment, arguing (1) a joint tenancy with right of survivorship cannot be unilaterally severed by conveyance to third parties under South Carolina law; (2) the conveyance of the Property from Williams, as Perkins' guardian and conservator, to herself individually was self-dealing contrary to Perkins' intentions and contrary to South Carolina and Alabama law; and (3) Alabama law did not permit Williams to convey the Property to herself with or without court approval.  Jeffcoat asked the court to issue a deed to the Property in his name alone.

The case was referred to the Charleston County Master-in-Equity. After a hearing, the master granted Williams' motion in a written order, finding (1) in South Carolina, "a joint tenant may unilaterally sever or alienate her ownership interest during her lifetime with or without the consent of the other joint tenant"; (2) Alabama law applied to Williams' actions in conveying her ward's interest in the Property; (3) the Alabama probate court, a court "of appropriate jurisdiction," ratified Williams' prior conveyance to herself; and (4) the unilateral conveyance was lawful. The master ordered the Property to be partitioned by sale.

The court of appeals affirmed. *Williams v. Jeffcoat*, 434 S.C. 461, 863 S.E.2d 822 (Ct. App. 2021). We granted Jeffcoat's petition for a writ of certiorari to review the court of appeals' decision.

## ISSUES

1. Whether there are genuine issues of material fact as to Jeffcoat's defenses and counterclaims, thus precluding summary judgment in favor of Williams on her partition claim.

2. Whether the court of appeals erred in holding the Alabama probate court had subject matter jurisdiction over Williams' petition for appointment as Perkins' guardian and conservator.

3. Whether the Master-in-Equity erred in holding that South Carolina Code section 27-7-40 allows a joint tenancy with right of survivorship to be unilaterally severed by conveyance of one cotenant's interest to a third party.

## STANDARD OF REVIEW

Appellate courts apply the same standard of review applied by the trial court to review the grant of summary judgment pursuant to Rule 56(c) of the South Carolina Rules of Civil Procedure. *Knight v. Austin*, 396 S.C. 518, 521, 722 S.E.2d 802, 804 (2012). Summary judgment is proper when the pleadings, depositions, affidavits, and discovery on file show there is no genuine issue of material fact such that the moving party must prevail as a matter of law. *See* Rule 56(c), SCRCP; *Knight*, 396 S.C. at 521-22, 722 S.E.2d at 804; *Kitchen Planners, LLC v. Friedman*, 440 S.C. 456, 463, 892 S.E.2d 297, 301 (2023) (eliminating the "mere scintilla" standard and holding the proper standard is the "genuine issue of material fact" standard set forth in the text of Rule 56(c), SCRCP). On appeal from an order

granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in the light most favorable to the non-moving party. *USAA Prop. & Cas. Ins. Co. v. Clegg*, 377 S.C. 643, 653, 661 S.E.2d 791, 796 (2008). Summary judgment is not proper when further inquiry into the facts is necessary "to clarify the application of the law." *Id.*

## DISCUSSION

I.    **Whether there are genuine issues of material fact as to Jeffcoat's defenses and counterclaims, thus precluding summary judgment in favor of Williams on her partition claim.**

Jeffcoat contends the master erred in granting summary judgment to Williams on her partition claim because there are genuine issues of material fact with respect to his affirmative defenses of unclean hands, lack of standing, and his "affirmative defenses and counterclaims" of fraud, breach of fiduciary duty, and slander of title.[1]

The court of appeals declined to address these arguments for two related reasons. First, the court of appeals concluded Jeffcoat acknowledged in his own motion for summary judgment that there were no issues of material fact; therefore, according to the court of appeals, Jeffcoat cannot now argue there are genuine issues of material fact barring a grant of summary judgment in Williams' favor. *Williams*, 434 S.C. at 470 n.4, 863 S.E.2d at 826 n.4 (citing *Miller v. Dillon*, 432 S.C. 197, 207, 851 S.E.2d 462, 468 (Ct. App. 2020) ("A party may not argue one ground at trial and an alternate ground on appeal.")).

We disagree with the court of appeals on that procedural point. Jeffcoat's position before the master as to whether there are genuine issues of material fact precluding a grant of summary judgment in favor of Williams is consistent with his position on appeal. As the court of appeals noted, Jeffcoat wrote in the conclusion to his own motion for summary judgment, "[t]here are no disputed facts in this case." That statement is correct—the basic facts are not in dispute. For example, there is no dispute that Williams, as guardian and conservator, conveyed the Property to herself, individually, for $10. However, as our standard of review requires, if there are genuine competing inferences to be drawn from this fact, summary judgment should not be granted. *See, e.g.*, *Vaughan v. Town of Lyman*, 370 S.C. 436, 448, 635

---

[1] In his three counterclaims, Jeffcoat asks for money damages but does not allege the deed from Williams to herself should be set aside for reasons based in equity.

S.E.2d 631, 638 (2006) (holding summary judgment was improper when the evidence was susceptible of more than one reasonable inference).  Jeffcoat has consistently argued Williams' self-dealing in conveying the Property to herself for $10 should preclude her from obtaining the equitable relief of partition.  Jeffcoat has also consistently argued that Williams' conveyance of the Property to herself was contrary to Perkins' intent for Jeffcoat to obtain exclusive fee simple title to the Property if she predeceased him.

Second, the court of appeals concluded Jeffcoat is precluded from now arguing there are genuine issues of material fact because, "at the motions hearing, the master stated no issues of material fact existed and the relevant matter was solely one of law" and "Jeffcoat neither objected to the master's assessment nor filed a Rule 59(e), SCRCP, motion to alter or amend the master's order."  *Williams*, 434 S.C. at 470 n.4, 863 S.E.2d at 826 n.4.  The master stated at the conclusion of the hearing that the question of whether a joint tenancy can be unilaterally severed by one joint tenant was a pure question of law.  However, the master did not state the question of unclean hands was a pure question of law, nor did the summary judgment order contain such a finding.  The master's final written order controls, as "[n]o order is final until it is written and entered."  *First Union Nat'l Bank of S.C. v. Hitman, Inc.*, 306 S.C. 327, 329, 411 S.E.2d 681, 682 (Ct. App. 1991), *aff'd,* 308 S.C. 421, 418 S.E.2d 545 (1992); *see also Ford v. State Ethics Comm'n*, 344 S.C. 642, 646, 545 S.E.2d 821, 823 (2001).  Jeffcoat was not required to make a Rule 59(e) motion under these circumstances.

### A.  Unclean Hands

Jeffcoat argues there is a genuine issue of material fact with respect to his defense that Williams' unclean hands should bar her demand for partition of the Property.  "The doctrine of unclean hands 'precludes a plaintiff from recovering in equity if he acted unfairly in a matter that is the subject of the litigation to the prejudice of the defendant.'"  *Wilson v. Gandis*, 430 S.C. 282, 308, 844 S.E.2d 631, 645 (2020) (quoting *Ingram v. Kasey's Assocs.*, 340 S.C. 98, 107 n.2, 531 S.E.2d 287, 292 n.2 (2000)).  A partition action is an equitable action.  *Zimmerman v. Marsh*, 365 S.C. 383, 386, 618 S.E.2d 898, 900 (2005).  The unclean hands doctrine recognizes the principle that one who seeks redress in a court of equity must himself not be guilty of some wrongdoing.  12 S.C. Jur. *Equity* § 7 (1992).  For a party to succeed on an unclean hands defense, the conduct of the person sought to be barred from recovery under the doctrine "need not necessarily have been of such a nature

as to be punishable as a crime or as to justify legal proceedings of any character." 27A Am. Jur. 2d *Equity* § 21 (2019). "[A]ny willful act concerning the cause of action that rightfully can be said to transgress equitable standards of conduct is sufficient" to establish the defense. *Id.* While mere stupidity, negligence, ignorance, or inappropriateness are insufficient to invoke the defense, a litigant's hands are rendered unclean by conduct that is "condemned and pronounced wrongful by honest and fair-minded people," or by conduct that is inequitable, unfair, dishonest, fraudulent, unconscionable, in bad faith, willful, grossly negligent, unrighteous, unconscientious, oppressive, or reprehensible. *Id.*

The following is a partial summary of the evidence relative to Jeffcoat's unclean hands defense, taken in the light most favorable to Jeffcoat. Soon after arriving in Charleston, Williams was added to Perkins' checking account and used funds from that account to pay thousands of dollars of her own expenses, unrelated to the care or wellbeing of Perkins. Williams then, without notifying Jeffcoat, took Perkins to Alabama on a day Perkins had a doctor's appointment in Charleston. Acting in a fiduciary capacity as Perkins' guardian and conservator, Williams deeded Perkins' interest in the Property to herself, individually, for $10.00 and "love and affection." According to Jeffcoat, this conveyance was contrary to Perkins' intent that whoever survived between Jeffcoat and Perkins would acquire sole title to the Property. This conveyance was made free and clear of any encumbrance, trust, or other obligation to use the Property for Perkins' benefit.

The evidence pertinent to Jeffcoat's unclean hands defense is susceptible of competing inferences. While Jeffcoat may ultimately be unsuccessful in this defense, summary judgment was improper. The master can resolve the unclean hands issue on remand.

### B. Lack of Standing

In his answer and counterclaim, Jeffcoat alleges Williams does not have standing to pursue this action against him. Jeffcoat did not raise his standing argument to the master with any specificity, the master did not rule on the issue, and Jeffcoat did not move for reconsideration and ask the master to rule on standing. *See, e.g., S.C. Dep't of Transp. v. First Carolina Corp. of S.C.*, 372 S.C. 295, 301-02, 641 S.E.2d 903, 907 (2007) (stating that, to be preserved for appellate review, an issue "must have been (1) raised to and ruled upon by the trial court, (2) raised by the appellant, (3) raised in a timely manner, and (4) raised to the trial court with sufficient specificity"). While Jeffcoat raised his standing argument to the court of

appeals, the court did not address the issue, and Jeffcoat did not petition for rehearing on the issue. *See* Rule 242(d)(1), SCACR ("Only those questions raised in the Court of Appeals and in the petition for rehearing shall be included in the petition for writ of certiorari as a question presented to the Supreme Court."); *Doe ex rel. Roe v. Orangeburg Cnty. Sch. Dist. No. 2*, 335 S.C. 556, 561 n.8, 518 S.E.2d 259, 261 n.8 (1999) (finding issue not raised in petition for rehearing to the court of appeals was not preserved for review before the Supreme Court). Because this issue is not preserved for appellate review, we will not reverse the master's order on this basis.

### C. Fraud

Jeffcoat argues the master erred in ordering partition of the Property because there are genuine issues of material fact with respect to his fraud counterclaim. However, Jeffcoat did not raise the issue at the summary judgment stage, and the master did not rule on the issue. *See S.C. Dep't of Transp.*, 372 S.C. at 301-02, 641 S.E.2d at 907. Because this issue is not preserved for appellate review, we will not reverse the master's order on this basis.

### D. Breach of Fiduciary Duty

Jeffcoat argues the master erred in granting summary judgment to Williams because there is evidence Jeffcoat was damaged by Williams' breach of her fiduciary duty to Perkins. The master did not rule on Jeffcoat's claim for breach of fiduciary duty. *See id*. While Jeffcoat raised the issue to the court of appeals, the court of appeals did not rule on the issue, and Jeffcoat did not raise the issue in his petition for rehearing. *See* Rule 242(d)(1), SCACR; *Doe ex rel. Roe*, 335 S.C. at 561 n.8, 518 S.E.2d at 261 n.8. Because this issue is not preserved for appellate review, we will not reverse the master's order on this basis.

### E. Slander of Title

Jeffcoat claims there are genuine issues of material fact with respect to his slander of title counterclaim. Jeffcoat alleged slander of title in his answer and counterclaim, but he did not raise the issue in his summary judgment motion or at the summary judgment hearing. The master did not rule on the issue, and Jeffcoat did not move for reconsideration. *See S.C. Dep't of Transp.*, 372 S.C. at 301-02, 641 S.E.2d at 907. Jeffcoat briefed the issue to the court of appeals; however, the court of appeals did not rule on the issue, and Jeffcoat did not raise the issue in his petition for rehearing. *See* Rule 242(d)(1), SCACR; *Doe ex rel. Roe*, 335 S.C. at 561 n.8,

518 S.E.2d at 261 n.8. Because this issue is not preserved for appellate review, we will not reverse the master's order on this basis.

## II. Whether the court of appeals erred in holding the Alabama probate court had subject matter jurisdiction over Williams' petition for appointment as Perkins' guardian and conservator.

Jeffcoat argues the Alabama probate court lacked subject matter jurisdiction over the guardianship and conservatorship proceedings because (1) Jeffcoat was not provided with notice of the proceedings, as required by section 26-2B-203(a)(2)(B)(ii) of the Code of Alabama; and (2) Alabama was not a "significant-connection state," as required by section 26-2B-203(a)(2) of the Code of Alabama.

Jeffcoat did not raise these two issues to the master, and the master did not rule on them. Jeffcoat did raise the notice issue in his brief to the court of appeals. Williams raised the significant-connection-state issue in her brief to the court of appeals, obviously to counter Jeffcoat's subject matter jurisdiction argument. The court of appeals addressed both issues. *Williams*, 434 S.C at 466-70, 863 S.E.2d at 824-26. The court of appeals concluded the Alabama probate court had subject matter jurisdiction over the guardianship and conservatorship proceedings, holding Jeffcoat was not entitled to notice of the Alabama guardianship and conservatorship proceedings and holding Alabama was a significant-connection state. *Id.* at 469-70, 863 S.E.2d at 826. We agree with the court of appeals that the Alabama probate court had subject matter jurisdiction over the guardianship and conservatorship proceedings, but we hold the notice issue and the significant-connection-state issue are not relevant to the question of subject matter jurisdiction.

Lack of subject matter jurisdiction may be raised at any time, including for the first time on appeal. *See, e.g.*, *Gantt v. Selph*, 423 S.C 333, 338, 814 S.E.2d 523, 525-26 (2018). However, the question of the Alabama probate court's authority to hear and decide Williams' guardianship and conservatorship petition under Alabama code section 26-2B-203 is not a question of subject matter jurisdiction. In South Carolina, "subject matter jurisdiction" refers to the court's "power to hear and determine cases of the general class to which the proceedings in question belong." *Dove v. Gold Kist, Inc.*, 314 S.C. 235, 237-38, 442 S.E.2d 598, 600 (1994) (quoting *Bank of Babylon v. Quirk*, 472 A.2d 21, 22 (Conn. 1984)). "Numerous cases have held that subject matter jurisdiction is not implicated when the court possesses the power to hear and determine cases of the general class to which the proceedings in

question belong." *Gainey v. Gainey*, 382 S.C. 414, 424, 675 S.E.2d 792, 797 (Ct. App. 2009) (collecting cases).

Likewise, in Alabama, "[s]ubject-matter jurisdiction concerns a court's power to decide certain *types* of cases." *Ex parte Seymour*, 946 So.2d 536, 538 (Ala. 2006). "That power is derived from the Alabama Constitution and the Alabama Code." *Id.* (citing *United States v. Cotton*, 535 U.S. 625, 630-31 (2002)). Alabama's constitution and code clearly grant to Alabama probate courts the power to hear and decide cases in which a party petitions to be appointed as a guardian or conservator of an incapacitated person. *See* Ala. Const. art. VI, § 144 ("There shall be a probate court in each county that shall have general jurisdiction of adoptions and the power to grant letters testamentary, and of administration, and of guardianships, and shall have such further jurisdiction as may be provided by law . . . ."); Ala. Code § 12-13-1(b)(6)-(7) (LexisNexis 2024) ("The probate court shall have original and general jurisdiction over . . . [t]he appointment and removal of guardians for minors and persons of unsound mind [and] . . . [a]ll controversies as to the right of guardianship and the settlement of guardians' accounts."); Ala. Code § 26-2A-31(a) & (c) (LexisNexis 2024) (entitled "Subject matter jurisdiction," and providing that "[t]he [probate] court has jurisdiction over all subject matter relating to estates of protected persons and protection of minors and incapacitated persons" and over "protective proceedings and guardianship proceedings"). Williams' guardianship and conservatorship petition fell into that class, so the Alabama probate court had subject matter jurisdiction over the proceedings.

Section 26-2B-203 merely outlines the circumstances in which Alabama probate courts have the "authority" or "power" to act in a given guardianship and/or conservatorship proceeding and does not confer the general power, *i.e.*, subject matter jurisdiction, to hear guardianship and conservatorship proceedings as a class. *See Ex parte Casey*, 88 So.3d 822, 829 n.7 (Ala. 2012) (citing Alabama code section 26-2A-31, not section 26-2B-203, for the proposition that "[t]he probate court has subject matter jurisdiction to determine whether . . . a person is incapacitated and is in need of a guardian or conservator"); *Miles v. Helms*, 359 So.3d 266, 272 (Ala. 2022) ("Probate courts have general and original jurisdiction over petitions for the appointment of guardians and conservators for incapacitated persons." (citing Ala. Code § 12-13-1(b)(6)-(7))); *Erskine v. Guin*, No. 1200401, 2023 WL 118547, at *14 (Ala. Jan. 6, 2023) (Bolin, J., dissenting) ("The probate court is a court of general and original jurisdiction regarding the administration of guardianships and

conservatorships." (first citing Ala. Const. art. VI, § 144; then citing Ala. Code § 12-13-1(b)(6)-(7); and then citing Ala. Code § 26-2A-31(a))).

Because section 26-2B-203 is not the statute conferring subject matter jurisdiction on the Alabama probate court, any nonconformity with that statute cannot be attacked for the first time on appeal. The notice issue and the significant-connection-state issue both arise under section 26-2B-203. Because neither issue was raised to the master, and because neither issue affects subject matter jurisdiction, we affirm the court of appeals as modified on that issue.

**III. Whether the Master-in-Equity erred in holding South Carolina Code section 27-7-40 allows a joint tenancy with right of survivorship to be unilaterally severed by conveyance of one cotenant's interest to a third party.**

Jeffcoat contends the master erred in finding the joint tenancy in the Property held between him and Perkins could be unilaterally severed, arguing South Carolina Code section 27-7-40 prohibits such severance.

We need not decide this issue because we hold section 27-7-40 does not apply to the joint tenancy created between Jeffcoat and Perkins. The deed creating their joint tenancy was executed on July 1, 2000, over one month before section 27-7-40 became effective on August 17, 2000. *See* Act No. 398, 2000 S.C. Acts 3424. Section 27-7-40 does not apply retroactively. "The retrospective application of a statute is not favored, and statutes are presumed to be prospective in effect." *State v. Isaac*, 405 S.C. 177, 186, 747 S.E.2d 677, 681 (2013). "Legislative intent is paramount in determining whether a statute will have prospective or retroactive application." *Id.* "A statute is not to be applied retroactively unless that result is so clearly compelled as to leave no room for doubt." *Id.* Nothing in the text of section 27-7-40 or the act by which it was passed suggests the legislature intended for section 27-7-40 to have retroactive effect. *See* S.C. Code Ann. § 27-7-40; Act No. 398, 2000 S.C. Acts 3424; *but see, e.g., Est. of Sherman ex rel. Maddock v. Est. of Sherman ex rel. Snodgrass*, 359 S.C. 407, 411, 597 S.E.2d 850, 852 (Ct. App. 2004) (finding a statute applied retroactively to deeds created prior to its enactment because the legislature specifically provided in the act that "[t]his act . . . applies to joint tenancies created either prior to or after the effective date of the act").

Under the common law, the joint tenancy between Jeffcoat and Perkins could be severed by unilateral conveyance by one cotenant to a third party. *Davis v. Davis*,

223 S.C. 182, 190, 75 S.E.2d 46, 50 (1953) ("The right of survivorship is merely one incident of a joint tenancy. Another incident of such tenancy is that any one of the tenants can destroy it, with the incidental right of survivorship, by a conveyance to a third person . . . ."); 6 S.C. Jur. *Cotenancies* § 20 (1991) ("Conveyance by a joint tenant to a third party severs a joint tenancy. The grantee becomes a tenant in common with the remaining joint tenants who nevertheless continue as joint tenants with each other still subject to survivorship rights.").

## CONCLUSION

The court of appeals erred in affirming the master's order granting partition of the Property, as there are genuine issues of material fact with respect to Jeffcoat's unclean hands defense. We affirm as modified the court of appeals' holding that the Alabama probate court had subject matter jurisdiction over Williams' petition for appointment as Perkins' guardian and conservator. We hold South Carolina Code section 27-7-40 does not apply to Jeffcoat's and Perkins' joint tenancy. Therefore, the common law applies, and their joint tenancy could be severed by unilateral conveyance by one cotenant to a third party. Consequently, Jeffcoat and Williams are tenants in common, and the sole issue to be resolved on remand is whether Jeffcoat's unclean hands defense will defeat Williams' demand for partition. We hold other issues raised by Jeffcoat are not preserved for review.

Therefore, we reverse in part and affirm as modified in part the court of appeals' decision, and we remand this case to the master for further proceedings consistent with this opinion.

**REVERSED IN PART, AFFIRMED AS MODIFIED IN PART, AND REMANDED.**

**KITTREDGE, C.J., FEW, J., and Acting Justice Donald W. Beatty, concur. Acting Justice Frank R. Addy, Jr., concurring in a separate opinion.**

**ACTING JUSTICE ADDY:**  I concur in Justice James's opinion in that summary judgment was improper as to Jeffcoat's unclean hands defense, and I also concur with the substance of the opinion addressing Alabama's subject matter jurisdiction and the applicability of South Carolina Code section 27-7-40.  Despite the correctness of the above holding and, in an effort to bring attention to issues which may well arise with the text of section 27-7-40, I write separately to address in part the question which was originally put to this Court.

This Court correctly concludes that the deed creating the joint tenancy between Jeffcoat and Perkins predated section 27-7-40, and, therefore, the statute's provisions have no bearing on *this* deed.  As the court of appeals correctly stated, the General Assembly's primary purpose in passing section 27-7-40 was to delineate specific language which would conclusively create a joint tenancy with right of survivorship by will or deed.  *Williams v. Jeffcoat*, 434 S.C. 461, 473, 863 S.E.2d 822, 828 (Ct. App. 2021).  Although the statute accomplishes this purpose, in light of the statute's legislative history and today's ruling by this Court, joint tenancies with rights of survivorship which were created pursuant to the language of section 27-7-40 may well remain subject to severance by unilateral conveyance of a joint tenant.[2]

In response to Jeffcoat's motion for summary judgment, Williams noted that the version of subsection 27-7-40(a)(iii) that appeared in the original bill read: "The fee interest in real estate held in joint tenancy may not be encumbered <u>or conveyed</u> to a third party or parties by a joint tenant acting alone without the joinder of the other joint tenant or tenants in the encumbrance <u>or conveyance</u>."  Prior to passage, however, the General Assembly removed the above underscored language from Act. No. 398, 2000 S.C. Acts. 3424.  Therefore, because the General Assembly elected to remove the language prohibiting unilateral conveyance by a joint tenant, the court of appeals' holding that even joint tenancies created pursuant to the language of

---

[2] The facts of this case present, at best, a cautionary tale and, at worse, a liability trap to the real estate practitioner.  As the court of appeals noted, had the author of the deed in issue created a tenancy in common with right of survivorship pursuant to the language used in *Smith v. Cutler*, 366 S.C. 546, 551, 623 S.E.2d 664, 647 (2005), Williams' unilateral conveyance would have been ineffective in severing the tenancy.  *Williams*, 434 S.C. at 474, 863 S.E.2d at 828.

section 27-7-40 remain subject to severance under the common law may well prove prescient.[3]

Another provision of section 27-7-40 could potentially create problems in litigating deeds created post-2000 under this section. Subsection 27-7-40(c) provides, "The provisions of this section must be liberally construed to carry out *the intentions of the parties*." (emphasis added). Typically, in passing upon the legal effect of a deed, courts are limited to the four corners of the deed, and extrinsic evidence is not admissible absent an ambiguity in the text. *Proctor v. Steedley*, 398 S.C. 561, 573, 730 S.E.2d 357, 363 (Ct. App. 2012) (quoting *Windham v. Riddle*, 381 S.C. 192, 201, 672 S.E.2d 578, 582-83 (2009)); *see also Bob Jones Univ. v. Strandell*, 344 S.C. 224, 230-31, 543 S.E.2d 251, 254 (Ct. App. 2001) (holding that extrinsic evidence showing intent may be admitted if there is a latent ambiguity in the text of the instrument). So, to what extent does this provision invite a court to look beyond a joint tenancy deed's four corners when otherwise arguably inadmissible extrinsic evidence may indicate that unilateral severance was not contemplated at the time of the deed's creation? Clearly, vitiating this evidentiary rule could not have been the intention of the General Assembly.

Factually, the manner by which Williams undertook to relocate her ailing mother and appropriate her mother's assets for Williams' own benefit is troubling to say the least. Regrettably, I agree that many of Jeffcoat's arguments were not preserved for review by this Court. Accordingly, I concur in Justice James's opinion.

---

[3] I am also sympathetic to the common sense of Jeffcoat's argument. It makes little logical sense that a unilateral *encumbrance* by a joint tenant is ineffective and void, but a unilateral *conveyance* acts to destroy a joint tenancy and create a tenancy in common. However, under a strict reading of the statute's text and, considering its legislative history, this result appears to have been the intention of the General Assembly.